## MARY EIBEL et al.

*v.*

## AUGUSTE VON FELL et al.

A court of equity will rescind a transaction entered into upon the faith of a material misrepresentation false in fact, if the person to whom it was made relied upon it and in consequence suffered injury. The fact that it was made innocently will not prevent such rescission. In this respect the rule of equity is broader than the rule of law in an action for deceit, where it is necessary to prove moral fraud in order to support the action.—*Held,* that although the vendor had made a material misrepresentation in reference to the property sold, the conduct and acts of the vendees, after they had knowledge of the facts amounted to a ratification of the sale.

On final hearing.

*Mr. Warren Dixon,* for the complainants.

*Mr. George J. McEwan,* for the defendants.

STEVENS, V. C.

On October 5th, 1892, Auguste Von Fell and her husband, the defendants, sold and conveyed to Mary and Jacob Eibel, the complainants, a house and lot in Griffith street, Jersey City, for $3,500. Of the consideration, $1,000 was paid in cash at or before the delivery of the deed, $2,000 was represented by a mortgage then on the property, payment of which was assumed by the vendees, and the balance ($500) by a mortgage given by the vendees to the vendors. In March, 1896, the complainants commenced this suit to rescind the sale, the bill alleging that it was represented to complainants at the time they purchased that the house was "a perfectly new house, in absolutely good condition," and that they afterwards learned that it was "an old building and had been put in repair and fixed up for the purpose of selling it as a new building."

The bill does not show *when* complainants first became aware of the falsity of the representation, but at the trial it was admitted that they knew of it within two months after the sale. Notwithstanding this knowledge, they paid to the defendants in installments, before the money was due, the whole of the principal and interest secured by the $500 mortgage, and in addition they repaired the property and collected the rents. They did not offer to reconvey until over three years after they had knowledge of the fact.

It was admitted that the house, as originally built, was one story high, and that Mr. Von Fell, after he became the owner, raised it and put another story under it. At the trial he denied having represented it as a new house. He said that he fully explained to complainants what he had done, and that he told them merely that it was "as good as new."

The evidence showed that after complainants took possession they were obliged on different occasions to make repairs. About a year after the purchase it was found necessary to replace some of the old floor beams and weather boards, which were found to be rotten, with new ones. The carpenter work cost $38, and there was some painting, the cost of which does not definitely appear. With this exception it is not clearly proved that the repairs were necessitated by faulty construction.

The complainants now ask that the transaction be rescinded.

The rule of equity applicable to this subject is well settled. So far as applicable to the facts of this case, it may be stated thus: A court of equity will rescind a transaction entered into upon the faith of a material representation, false in fact, if the person to whom it was made relied upon it and in consequence suffered injury.

There is this distinction between the rule of equity and the rule of law: At law, moral fraud must be shown to have been present in the misrepresentation (*Cowley* v. *Smyth, 17 Vr. 382*); in equity the complainant may succeed, although the misrepresentation was innocent (*Arkwright* v. *Newbold, 17 Ch. Div. 320; Redgrave* v. *Hurd, 20 Ch. Div. 1*).

Under these rules if the representation was as the complainants

claim it was, viz., that the house was a new house, they would, supposing there was no obstacle arising out of their own conduct, be entitled to succeed both at law and in equity, because the statement must have been fa se to the knowledge of the defendant making it. If the representation was as defendants claim it was, viz., that the house was as good as new, then I think that the complainants would still be entitled to succeed in equity, because the assertion, in this form, was false in fact, even if we assume that defendant, who seems to have personally superintended the work of reconstruction, did not know that the building contained the rotten timbers. It is true that it was the assertion of an opinion, but, as it seems to me, it was the assertion of an opinion which contained within it the assertion of a fact, viz., that the materials used in rebuilding were not rotten. Opinions of this kind may afford ground for an action. *Smith* v. *Land and House Property Corporation, 28 Ch. Div. 15.* Although the cost of replacing this rotten material did not probably exceed, if it amounted to, $100, I cannot say that the defect was trivial. Had the real condition of the building been known to the complainants, I doubt very much whether they would have purchased for the price agreed upon.

There is, however, an objection to the complainants' recovery which seems to be insuperable. They both admit that, within two months after they purchased, they knew the house was not a new house. They say that they were almost immediately obliged to repair because of the condition in which they found it. They had the rotten timbers replaced about a year after they bought. Notwithstanding this, they continued to pay the interest on both mortgages and to pay the principal of one of them. They continued, moreover, to lease the different floors of the property to tenants, to collect the rents and in all respects to deal with the property as their own. They kept on doing this for nearly three years and a half after they first discovered, as they say, the falsity of the representation, and for nearly two years and a half after they had replaced the rotten timbers. I think that, by this conduct and these acts, they ratified the transaction. *Pom. Eq. Jur.* § *916.* It is said that the payments

of principal and interest on the $500 mortgage were made ignorantly and under an apprehension that if not promptly made the mortgagees would foreclose and thus forfeit their interest.   But it appears that the payments of principal were made before they were due, and no reasonable explanation is given of those other acts indicating an intention to affirm, to which I have alluded. The true explanation of their conduct appears to be found in the fact, not seriously controverted at the trial, that the property, was really worth about what complainants paid for it; that it, for the greater part of the time, rented well and yielded a fair return for the money invested, and that not until rents fell did complainants seriously entertain the idea of questioning the transaction.   Says Mr. Justice Depue, in *Williamson* v. *New Jersey Southern Railroad Co., 2 Stew. Eq. 320:* "The vendor may rescind the contract of sale and reclaim the property until, with a knowledge of the fraud, he elects to ratify and confirm the sale.   *   *   *   Delay in exercising the power of rescission is evidence of an election to treat the sale as valid, of more or less weight, according to the circumstances of the case, but of itself does not operate as an estoppel unless, in the meantime, superior rights of third persons have intervened."   In that case the vendor, the car company, got nothing of value in return for the cars which it delivered, and did no acts in respect of the worthless bonds which it received in payment, indicating an intention to ratify the sale after it became aware of the fraud. In the case in hand, the vendees, long after they discovered the facts, continued to treat and deal with the property as their own. Both their acts and their delay in exercising the power of rescission seem to me to be strong evidence of an election to treat the sale as valid.   I come to this conclusion the more readily because, if the complainant's contention be well founded, he may still resort to an action of deceit, in which he will recover an exact equivalent for the injury which he claims to have suffered at the hands of the defendants.   The justice of this case, after so much delay, will be far better subserved by such a recovery than by a rescission.