*4 Robbins.* Lloyd *v.* Turner.

---

ELIZABETH LLOYD

*v.*

HELEN TURNER et al.

[Argued December 11th, 1905. Decided January 12th, 1906.]

1. A widow under her right of quarantine is entitled, until her dower is set off, either to occupy or rent the homestead at her election, without any obligation on her part to pay rent.

2. Where the use of a dwelling-house by a tenant in common does not amount to a denial of the rights of her co-tenants, and she does nothing to prevent them from equally enjoying the property, she is not bound to pay rent for the part occupied by her in the absence of an express agreement.

3. Where one tenant in common collects the rents from a portion of the property, which is rented by her, she is bound to account to her co-tenants for the amount so received less reasonable expenditures for repairs, restorations, taxes, interest on mortgages, if any, insurance and the like.

On bill, answer, cross-bill, &c.

*Mr. Howard Carrow,* for the complainant.

*Mr. John S. Westcott,* for the defendant.

GREY, V. C. (orally).

The bill in this case is filed for the partition of a house and lot at Fourth and Berkley streets, Camden, N. J. The property was derived from one Edward Augustus, who, at the time of his death, was seized of it in fee. He left a widow and four children him surviving, to whom, at the time of his death intestate, the fee-simple of the property descended, subject to the dower right of the widow, Mrs. Edward Augustus. At the time of the death of Mr. Augustus it is undisputed that the property consisted of a dwelling, part of which was used separately as a store, and rented out by Mr. Augustus, and of a small shop in the rear of the lot, the lower story of which he rented out and the upper story of which he used for his own convenience and business.

Mrs. Edward Augustus survived her husband, and, with the family, then occupied the dwelling-house as their home. The law is that the homestead property of the intestate husband, in which the husband and wife resided at the time of the husband's death, may be thereafter occupied by the widow without any obligation on her part to pay rent. It has been further held, in exposition of the status of the widow in the privilege of her quarantine, that the statute which gives her the right to enjoy "the homestead" gives her the right either to rent it to others or to occupy it for her own use, as she may choose.

I think, therefore, that as her dower estate was never admeasured to her, there should be no accounting for any portion of the home property at Fourth and Berkley streets for any occupation or renting of that property by Mrs. Augustus, the widow of the ancestor, during her life, which lasted up to January, 1900.

It is quite plain that what her daughter, Mrs. Lloyd, did during that period was really done in behalf of Mrs. Edward Augustus, the widow of the decedent owner, for which, having

received the authority and approval of Mrs. Edward Augustus, widow enjoying her quarantine in the property, Mrs. Lloyd cannot be called upon to answer to anybody else.

This is not the only ground upon which the cross-bill rests, for the cross-bill complainant insists that Mrs. Lloyd, the complainant in the original bill, should, since the time of the death of the widow, account for the use and occupation of the dwelling-house during the period that she has occupied it for her own use. It is not shown that Mrs. Lloyd has, in occupying the dwelling-house, done anything which was in the nature of a denial of the rights of her co-tenants in common, or that she did anything that amounted to an exclusion of the other tenants from enjoying the property with her, according to their several rights; nor has there been any sufficient showing that she obligated herself by express agreement to pay rent for the portion of the property which she occupied. There has been some mention made here that she did agree to pay rent to the other tenants for her occupation of the premises. She says she did not. The testimony that she did is not sufficient to justify any decree that Mrs. Lloyd shall pay rent for the dwelling portion which she occupied.

A claim is made that Mrs. Lloyd did not object, or that she was at least willing, to make the payment of $15 a month for rent. Testimony on this point was given by Mr. Turner. The alleged leasing was wholly by parol, and was in its essential incidents quite uncertain. Mr. Turner, in narrating the conversation, did not say that Mrs. Lloyd agreed that she would rent the property, and would pay $15 as rent, but only that she agreed that $15 per month was not an unreasonable rent. The alleged agreement did not specify the term for which Mrs. Lloyd was to occupy the premises; nor, as stated, does it show that there was in fact any demise thereof.

The testimony does not satisfy me that there was any agreement which either at law or in equity charged Mrs. Lloyd with an obligation to pay rent, since her mother's death in January, 1900, for that portion of the premises which she occupied as a dwelling-house, by herself and her family.

It is quite evident to me that the use made of the other portions of the premises stands on an entirely different basis. Mrs. Lloyd ought to account for those rents and profits which she collected after her mother's death in January, 1900, for the occupation by various lessees of the store part of the dwelling-house, and also for the rents and profits which she received and collected for the use of the shop in the rear of the lot. The rentals thus collected by Mrs. Lloyd should constitute the left side of the account, showing what should be charged against her. On the other hand, she is entitled to be credited for any expenditures by her made for repairs and restorations, or for the payment of taxes, interest on any mortgages (if any there were), insurances, and such other lawful expenditures as she may have made in the care of any of the property. These should make up the right side of the account and constitute the credits to which she is entitled.

It is quite possible that, as I have settled the basis upon which Mrs. Lloyd must account, the parties may come to an agreement on that branch of the case. If they can, it would be a happy thing. If the clients will let counsel alone, it is probable that they will arrange this accounting without further contest or expense.

I will hold the matter for a week. If the parties are unable to agree, I will refer it to a master to state an account in accordance with the conclusions above expressed.