On February 25th, 1924, the Southern Surety Company of Iowa entered into a bond for $1,100,000 to the county of Allegheny, Pennsylvania, to secure the county's deposit in the Carnegie Trust Company during the term of the then county treasurer. The complainants, Commercial Casualty Insurance Company and New Jersey Fidelity and Plate Glass Company, reinsured the Southern company against loss on its bond, each to the extent of $50,000. The Carnegie Trust Company failed in 1925, owing the county more than the sum of the bond, and the Southern company paid its loss and called upon the reinsurers to contribute, and upon refusal brought an action against each in the supreme court in September, 1925. They severally answered setting up certain affirmative defenses, with which we are not now concerned. Upon motion to strike the answers, and a counter-motion for leave to file supplemental answers setting up additional defenses, out of time, an order was entered in February, 1926, striking out part of the answers, and the counter-motion was denied with leave to renew upon affidavits supporting some of the additional defenses. In October following, and on the eve of the trial at law, the application was renewed, and was denied by the chief-justice on the ground, as alleged in the bill, "that the defendants in said action were in laches in presenting the matter to the court so near the time when the trials were to come on." It appears that the information supporting the defenses had been in the possession of the defendant's attorney since the previous June. Thereupon, this bill was filed to cancel the policies of reinsurance and to stay the actions at law, and a restraint was granted until the return day of the order to show cause why an injunction should not issue pendente lite restraining the suits. The matter is now up on the order to show cause, and also on motion to strike the bill for want of equity, on the ground that the law court has complete jurisdiction to entertain the defenses there proposed and now set up in the bill for equitable relief; and, further, that the refusal of the law court, in the exercise of its discretion, to entertain the defenses out of time *Page 94 
and because they came too late, furnishes no ground for equitable interference.
The allegations of fraud in the procurement of the policies of reinsurance alleged in the bill, and which were rejected by the law court, are, that to induce the reinsurance, a dulyauthorized agent of the insured represented to one of the complainants that his company was about to enter into a bond to the Carnegie Trust Company for $1,400,000; "that the president of Carnegie Trust Company was one John A. Bell, who was a man of large financial means, worth at least $1,400,000, and known by him to be worth far in excess of that amount and a sum not less than ten or eleven million dollars; that said Carnegie Trust Company was a solvent and well-managed institution, and that the fact of the solvency of the trust company and wealth of said Bell, who was an indemnitor of the Southern company, would, of course, lessen the risk of the proposed reinsurers," and that, relying on the representations, the contract of reinsurance was entered into. (It is not alleged, but it will be assumed as pleaded, that these representations were carried to the other insurer by direction of the insured.) It is further alleged that the bond of the Southern company to the trust company was a renewal and not an original bond (and it will be assumed as pleaded, that it was represented to be an original bond), and that the insured concealed from the complainants that the several insurers on the previous bond had refused to reinsure the previous bond, and that they refused because of irregularities of the Carnegie Trust Company and John A. Bell, its president, disclosed during an investigation known as the Kephart investigation conducted by the auditor general of Pennsylvania, which resulted in the indictment and conviction of Kephart, the state treasurer, of making false reports of his accounts (with the Carnegie Trust Company) and the compulsory payment by the Carnegie Trust Company to the state of the sum of $15,000 for interest on moneys of which the trust company had the unlawful use as a result of the irregularities between Bell and Kephart; and that had the complainants known the bond was a renewal, and that the *Page 95 
previous reinsurers had refused to reinsure, they would have learned that these reinsurers had refused because the Carnegie Trust Company was insolvent and had been improperly managed, and that they, the complainants, would not have undertaken to reinsure. The further allegations are that at the time of the representations the said John A. Bell was insolvent and that the Carnegie Trust Company was insolvent, and instead of being well managed was carelessly and corruptly conducted by the said John A. Bell. That all the representations were false to the knowledge of the agent of the insured who made them, except the one as to the financial condition of Bell. Two additional allegations, that it was represented that the bond was to be $1,400,000, whereas it was for $1,100,000, and that the assured would itself carry $150,000 of the liability, are not traversed, and for the reasons that the bond was, in fact, for $1,100,000, to the knowledge of the reinsurers, and that it was stipulated in the bond that the assured would carry a risk of $150,000 on the principal; that is, it would bond the Carnegie Trust Company by separate bond for that amount without reinsurance. The false representations alleged in the proposed supplemental answers in the law suits are not precisely in the language of the allegations of the bill, nor are the allegations of concealment identical, but they are of the same significance.
If the fraud upon which appeal is made to equity is cognizable at law, the rejection of the defenses, tendered out of time, because of laches, does not, of course, invite interposition by this court. Disciplinary measures of the law courts denying defenses are not grounds for entertaining the same defenses in equity. And it is not understood that the complainants rest their claim to be heard in equity because the law court for that reason refused to hear them. The bill is presented on the theory that although the complainants may have a remedy at law, they are at liberty to come into equity, because of its original jurisdiction over all matters of fraud, and because their defense of fraudulent procurement rests in proof which is sufficient in equity only to overthrow the contracts sued on at law, viz., that the representation *Page 96 
as to the financial worth of John A. Bell was untruthful but not deceitful.
Inherently, equity has jurisdiction in all cases of fraud.Eggers v. Anderson, 63 N.J. Eq. 464. But its doors have not been as freely open to all manner of fraud since the law courts have taken upon themselves to grant relief in some cases of fraud. When the primary right is legal, as it is here, and the jurisdiction of the law courts is concurrent, and if the remedy at law is adequate, certain and complete equity remains passive. Equity remains inactive only in that class of fraud that are recognized and remediable at law. A misrepresentation without intent to deceive will not sustain an action at law for deceit, while in equity an untruthful representation of a material fact, though there be no moral delinquency, is deemed to be fraudulent.Eibel v. Von Fell, 55 N.J. Eq. 670; Straus v. Norris,77 N.J. Eq. 33; Cowley v. Smyth, 46 N.J. Law 380. The law courts not having as yet taken upon themselves to relieve against wrongs resulting from misrepresentations fraudulent in conscience only, courts of equity continue to perform that function.
The charge that the false representations complained of, save the one as to Bell's financial wealth, were knowingly false and deceitfully made, is a defense cognizable in the law courts.Cowley v. Smyth, 46 N.J. Law 380. And, so the concealment of the fact that the bond of the Southern company was a renewal and not an original bond, if it constitutes a meritorious defense, is as available at law as in equity. Insurance Co. v. Woodruff,26 N.J. Law 541; Joyc. Ins. § 1844 et seq.; Carter v. Boehm,13 Eng. Rul. Cas. 501. The claim to equitable relief is founded by the bill upon the misrepresentation by the agent of the Southern company that "John A. Bell, who was a man of large financial worth, worth at least $1,400,000, and known by him to be worth far in excess of that amount and a sum not less than ten or eleven million dollars." As to this it is alleged "that the complainants do not claim that the said representations were untrue to the knowledge of the said Swiggi (the agent). The misrepresentations *Page 97 
in this respect, it will be noted, are twofold. So much as representation that Bell was a man worth at least $1,400,000, was an affirmation of a fact, not of opinion, and if untrue, though ingenuously made, would be condemned in equity only; the added representation that Bell was known by him (the agent) to be worth far in excess of that amount and not less than ten or eleven million dollars, was an affirmation of a fact; that is, that the fact was known to him, and if untrue was a deceit, and redressible at law. If, at law, the complainants should establish the first and not the second, their defense would fail, where as in equity if they proved the first and not the second they would prevail. In this respect the jurisdiction of the law courts is obviously not equal to the occasion; not on par with equity's remedy.
But the complainants are not reduced to the single and narrow ground assigned in their bill in maintaining their suit in this court. The concurrent jurisdiction of the law courts to relieve against deceitful representations does not abridge equity's jurisdiction to grant relief on that score, and even though it be, as contended, that the bill discloses that all the misrepresentations were deceitfully made, it may be that the complainants would not be able to prove that the misrepresentations were knowingly false, but could only prove that they were material and untrue — a defense in equity only. The complainants are not to be put to the hazard at law when the requirements in equity are less exacting. In Schoenfield v.Winter, 76 N.J. Eq. 511, on demurrer to a bill to rescind a contract on the ground of deceitful misrepresentation and to restrain an action at law in assumpsit arising out of the contract (78 N.J. Law 92), Vice-Chancellor Howell overruled the demurrer, holding that "while the bill sets out a common law action for deceit, this does not interfere with the jurisdiction of equity. In order to set aside a contract founded in fraud, it is only necessary in equity to prove that the representation upon which the action is founded is false, that it is material, and that damage has ensued; while at the common law the proof must go to the extent of satisfying the jury that the defendant knew that *Page 98 
the statement relied upon was false. It will therefore be seen at a glance that the remedy in equity is much broader and much more efficient than the remedy at law could be. It was held in Morse
v. Nicholson, 55 N.J. Eq. (10 Dick.) 705, that in a case where the jurisdiction of the courts of law and equity for the redress of frauds was concurrent, the court of equity should entertain the cause and determine it upon its merits, provided that adequate relief could not be obtained at law; and this, I take it, is a general rule which ought to be applied in the discretion of the court to cases of fraud where there are concurrent remedies." See, also, Straus v. Morris, supra.
Nor is the remedy certain in the suits at law. The plaintiffs there may, before or at the trial, suffer nonsuits and subject the complainants to other and vexatious suits here or in other jurisdictions. They are entitled to the more nearly certain remedy afforded in equity by decree to surrender the policies of insurance for cancellation upon proof of fraud, whether the fraud be unconscionable or deceitful. In Metler's Admrs. v. Metler,18 N.J. Eq. 270, on a bill to restrain an action at law on a negotiable promissory note and to have it delivered up for cancellation, a demurrer on the ground that there was no adequate remedy at law was overruled principally upon the ground that the note was negotiable, but also upon the consideration that the suit might be discontinued and the note held until the evidence to prove its invalidity could not be had. And it was also observed that the weight of authority is in favor of equity's jurisdiction to order the cancellation even though an instrument was at law void on its face. The chancellor's opinion was affirmed by the court of errors and appeals (19 N.J. Eq. 457), which approved and emphasized the chancellor's reason, that the action at law could be discontinued and suit brought later, and, perhaps, in a foreign jurisdiction when the proof to defeat it might not be available. Vice-Chancellor Howell, in Schoenfield
v. Winter, supra, in concluding that the remedy at law was not as complete as in equity, considered that the complainant, upon establishing the fraud, was entitled to a cancellation *Page 99 
of the contract and to be relieved of any obligation under it, and discharged from its performance. And in Sweeny v.Williams, 36 N.J. Eq. 627, a bill to restrain an action at law to recover on a non-negotiable bond on the ground that it was given without consideration, Mr. Justice Magie, speaking for the court of errors and appeals, said, in holding that chancery had jurisdiction of the merits: "The complainant was entitled, if at all, to a relief broader than could be afforded him in the action at law. He asked, and if his contention is correct, was entitled to a perpetual injunction against the bond. At law, his relief as to the bond could be obtained only in case the plaintiff brought his action to trial. If he discontinued or submitted to a nonsuit, the relief could not be obtained there."
The motion to dismiss the bill is denied, and as the affidavits support the allegations of the bill an injunction pendente lite
will issue. To deny a stay would be to destroy the subject-matter of the suit, and would at this time deny relief which the complainants might be entitled to on final hearing. To insure the good faith of the complainants to abide the judgment of this court they will, if the defendant moves for that purpose, be directed to pay the amount of the insurance into court.