The complainant Travelers Insurance Company, a corporation of the State of Connecticut, was organized for the business of issuing policies for life, health, disability, accident and other kinds of insurance.
On December 14th, 1925, the defendant Leo E. Evslin, applied to the complainant company for a policy of life insurance upon his own life in the amount of $5,000 payable to his wife, Matilda Stalberg Evslin, also a defendant, with the result that on December 17th, 1925, the complainant company issued its policy number 1185277, wherein it agreed to pay Matilda S. Evslin the sum of $5,000 upon the death of said Leo E. Evslin.
In said application Evslin stated:
A. "He was born in Russia on July 15th, 1870, and that his age was fifty-five years." *Page 528 
B. "12A. I have not applied for life insurance and I have not been examined by a medical examiner without contract having been issued on such application or examination; nor has any contract been issued other than as applied for — except as herein stated." No exception was therein stated.
C. "13. I am not deformed; I have had no bodily or mental disease, nor have I received medical or surgical attention or advice within the past five years — except as herein stated." No exception was therein stated.
On December 23d 1925, Evslin applied again to the complainant company for a policy of life insurance upon his life in the amount of $20,000 payable to his wife, with the result that on December 31st, 1925, the complainant company issued four policies numbers 1187913, 1187914, 1187915, 1187916, respectively, each in the sum of $5,000 payable to said Matilda S. Evslin upon the death of her husband. Said application requested the issue of said $20,000 of insurance in four policies of $5,000 each.
In said application he stated his place and date of birth and his age the same as in the first application. Clauses 12A and 13 were also in the second application as in the first.
On December 30th, 1925, Evslin applied to the complainant company for a policy insuring him against loss resulting from bodily injuries, effected directly and independently of all other cause, through external violent and accidental means, against disability by disease, c., and on said date the said company issued the policy to said Evslin under classifiction — extra preferred in the principal sum of $1,500.
In said application he stated his place and date of birth and his age the same as in the first and second applications.
In answer to part of question "K" of said application he stated that no life, accident or health policy issued to him had been canceled nor had any renewals thereof been refused by complainant company, or any other company or association.
In said applications were the following questions to which he made the respective answers:
"Q. Are you maimed or deformed? No. Is your sight or hearing impaired? No. Have you ever had a hernia or worn a truss? No.
"Have you ever had any of the following?: Epilepsy? No. Syphilis? No. Vertigo or dizziness? No. Diabetes? No. Tuberculosis? *Page 529 
No. Mental Disorder? No. Disease of brain or nervous system? No. Disease of tonsils, nose or throat? No.
"P. Have you within the past five years had medical or surgical advice or treatment or any departures from good health? If so, state when and what, and duration. None.
"S. Do you agree that the falsity of any answer in this application for a policy shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance or the risk or the hazard assumed by the company? Yes."
The complainant company alleges that the answers and statements in said several applications were untrue, in that:
a. Said Evslin was born on July 15th, 1869, and was therefore at the time of said application fifty-six years of age.
b. Said Evslin was, at the time of making said application, sick and had a bodily disease, namely, ulcers of the stomach and other diseases, and that he had knowledge thereof.
c. Said Evslin had received medical or surgical attention or advice during the five years preceding the dates of said several applications, and that said answers were material and were untrue and known to be untrue by Evslin at the time said applications were made, and that they were willfully and fraudulently answered and stated for the purpose of influencing the complainant.
On May 4th, 1926, the complainant company advised defendant Leo E. Evslin that the said several policies had been procured through his fraudulent representations, and that complainant canceled and rescinded the same, and at that time tendered to him all premiums paid by him to it, and demanded the return of said policies.
The defendant refused to accept the return of the moneys paid by him or to surrender said policies or any of them.
The complainant prays: "2. That a decree be entered canceling and rescinding said policies of insurance and ordering the said defendant Leo E. Evslin to surrender up the same for cancellation."
On notice, an order was advised permitting the complainant to amend his bill by adding a fourth cause of action, in which it was alleged: *Page 530 
"2. Said applications for insurance referred to in said causes of action contain the following agreement:
"`14. I hereby agree for myself and for any person who may have or claim an interest in any contract which may be issued upon this application, as follows: A. That in case of suicide, committed while sane or insane, within one year from the date of the contract issued, the limit of recovery thereunder shall be the premiums paid. B. That every declaration herein above contained is true, and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health in so far as I have knowledge or information. C. That my acceptance of any contract issued on this application shall constitute a ratification by me of any corrections, additions or changes made by the company and noted in the space provided for `Home Office Indorsement Only' upon any written consent thereto. D. That no agent can make, alter or discharge any contract issued on this application or extend the time for payment of premiums on such contract, nor can such contract be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the company, signed by the president, or one of the vice-presidents or secretaries, whose authority will not be delegated.'"
"3. That at the time of the payment of the first premium defendant Leo E. Evslin was not in good health, but was sick, of which he had actual knowledge and information."
In the answer Evslin avers he was born on July 15th, 1870; that he was not at the time of making the applications sick, nor did he have a bodily disease known as ulcers of the stomach, or any other diseases, nor did he have knowledge that he had any disease at the time he signed the said applications.
He admits that he received medical attention in the latter part of the year 1922 for some digestive disorder; that the said disorder was not serious in nature and that in a short time he became completely cured of the disorder and has not since suffered therefrom. He admits he was a patient at the Lexington Hospital, New York City, but denies treatment by Dr. Hoffheimer or Dr. Post. He denies fraud or any purpose to mislead the complainant, and says failure to mention same was from lack of memory. He also alleges that the facts mentioned did not enter into estimating the degree or the character of the risk to be assumed or in fixing the rate of premium to be charged. *Page 531 
The defendants allege:
First Defense. After the complainants learned of the facts set forth in the bill of complaint filed in this cause, they sent bills for premiums on the above-mentioned policies and accepted payments of premium thereon.
Second Defense. After the complainants learned of the fact mentioned in the bill of complaint in this cause they waived their rights to declare a forfeiture thereunder and to cancel and terminate the contract by reason of delaying to proceed thereunder an unreasonable length of time.
Third Defense. At the time the complainants issued the policies of insurance mentioned in the within bill of complaint they had knowledge of all the facts mentioned in said bill of complaint and issued their policy thereunder, and were not deceived or influenced by any incorrect answers thereto.
There is no satisfactory testimony as to his age.
In applications to the Equitable Life Insurance Company and to the Pacific Mutual Life Insurance Company, he stated 1869 to be the year of his birth. In an affidavit filed with the Equitable Life Insurance Company, with a proof of claim, he swore he was born in 1869. In his application for naturalization he made a like statement.
This is important, because it is testified that if 1869 was the true date of his birth, the application for health insurance would not have been accepted and the policy issued.
The testimony is convincing that the defendant made misrepresentations, and there can be no doubt but that they were material, and that they mislead the company.
It is evident that the misrepresentations were made with knowledge, and are therefore, being untruthful representation of a material fact, deemed fraudulent. Commercial CasualtyInsurance Co. v. Southern Surety Co., 100 N.J. Eq. 92.
The fact that a misrepresentation was made innocently will not prevent rescission. Eibel v. Von Fell, 55 N.J. Eq. 670.
Equity will relieve from false representations whether they were intentional or made through mistake. Straus v. Norris,77 N.J. Eq. 33; Cowley v. Smyth, 46 N.J. Law 380. *Page 532 
The memorandum filed by the solicitor of defendant is almost exclusively to the argument that there is no proof that Evslin knew that these statements were untrue. In view of the foregoing citations this avails them nothing.
The defendant has failed to prove either of the three defenses pleaded.
A decree will be advised granting the prayer of the bill.