On March 6th, 1930, the complainant recovered a judgment against Lida H. Sooy and Walter C. Sooy in the New Jersey Supreme Court in the sum of $51,916.82, together with interest and costs. Said judgment was obtained upon a bond and warrant and was for a deficiency after foreclosure of a certain mortgage made by the said Sooys to Kessler in the sum of $50,000.
On March 15th, 1929, the defendants conveyed to Leslie Thomas Sooy, their son, by several deeds of conveyance, lands and premises described therein and in the bill of complaint. *Page 87 
The bill alleges that said conveyances were made without consideration and with intent to defraud creditors, and that the said property is now held in trust for the said Walter C. Sooy and Lida H. Sooy.
The defense is that on the 14th day of February, 1923, Dr. Sooy and his wife entered into an agreement with their son, Leslie Thomas Sooy, that if the son would give up his desire to study music and make what he thought would be a "career" in that way, and enter upon the study of medicine, and during his minority help his father and mother in the conduct of two hotels or rooming properties, that when he was graduated (or was graduating) in medicine, and after he had become twenty-one years of age, the father and mother would convey to him all of the property they then owned. The son complied with the terms of the contract, and in accordance with the terms of the agreement they made the conveyances. He had reached his majority at that time but did not actually graduate and receive his degree as an M.D. until the 29th of June of the same year.
The making of this contract was testified to by Walter C. Sooy, his wife, Lida H. Sooy, the son and Mrs. Alma Kyte, a niece, who were present. Their testimony is clear and, of course, was not and could not be specifically denied. The effect of these witnesses' testimony was very much weakened by the manner of the son upon the witness-stand. The son, upon direct examination, in response to the question: "Tell us what the agreement was and how it came to be made?" answered: "The agreement was as follows: After I, Leslie Thomas Sooy, had obtained the age of twenty-one years and was graduating from the Hahnnemann Medical College they, Walter C. Sooy and Lida H. Sooy, would convey to me all certain properties then, in 1923, in their possession, any portion of land each, and property, each for the sum of one dollar and for other valuable consideration, said valuable consideration being consisted in two things, one that I must change my intended career from one of music, which I loved, to one of medicine, and further valuable consideration that I *Page 88 
must spend all time when not occupied in the study of medicine in their service, working for them in one or other of the two hotels, which I agreed to." Upon cross-examination he testified as follows: "The following agreement was made on February fourteenth, 1923, as I said before, that after I, Leslie Thomas Sooy, attained the age of twenty-one years and was graduating from the Hahnnemann Medical College they, Walter C. Sooy and Lida H. Sooy, would convey to me all certain properties then, in 1923, in their possession, these properties to be conveyed each for the sum of one dollar and for other valuable consideration as follows: (1) that I must change my intended career from one of music to one of medicine; (2) that I must spend the time that was not occupied in the study of medicine in their service working in the hotels."
It is apparent that he was testifying to what he believed was the result of the conversation with his father and mother and not what actually occurred Manifestly this is so, as the father and mother state what they claim to have actually occurred, and not the result thereof. The effect of the son's testimony is very much weakened by his manner upon the witness-stand and in his oft-repeated insistence that he "could not recall."
The Sooys insist that they were solvent at the time of the conveyances to the son. Their solvency would depend entirely upon the value of the real estate covered by the mortgage held by the complainant, and other tracts likewise mortgaged, several of which mortgages were foreclosed and the land sold, and a large deficiency arose in each instance. In the complainant's case the deficiency judgment was greater than the original principal sum, the sale of the land not producing sufficient to pay interest and costs.
The testimony is convincing that although conveyance was made to the son, the father attended to almost all of the details concerning the properties, receiving practically all of the money, depositing it in the bank in the son's name and drawing it out by checks signed by the son. These checks, in *Page 89 
nearly all instances, were signed in blank by the son and later filled in by the father, and in some instances were used by the father in the payment of his personal debts.
Testimony was taken as to the value of certain tracts of land consisting of what has been called "hotels" in Atlantic City, and I have no doubt that the fair salable value of their assets at that time was less than the amount that would be required to pay their probable liability on their existing debts as they became absolute and matured, and that, therefore, they were insolvent.Uniform Fraudulent Conveyance act, clause 1, section 2,chapter 213, laws of 1919; 1 Cum. Supp. Comp. Stat. p. 647; Williamson
v. Bender, 105 N.J. Eq. 367; affirmed, 107 N.J. Eq. 466.
The conveyances made to the son rendered the Sooys insolvent and are, therefore, fraudulent as to creditors, if such conveyances were made without a fair consideration. UniformConveyance act, Ibid. 647.
The judgment of the complainant is bona fide. No claim is made by the defendants' counsel that any equity resulted by reason of the fact that the defendants, the elder Sooys, purchased the land which was foreclosed from the complainant for the sum of $100,000, paying him $50,000 in cash and giving the bond and mortgage in question, with the result that after foreclosure, the complainant is in possession of the land as well as the $50,000 paid him in cash, and whatever he may collect from the judgment in question. This land was purchased by Sooy from Kessler with the expectation of using it in a contemplated deal which was then in actual progress. Sooy expected to make money by reason of the purchase, and his failure to realize that expectation is not in any way chargeable to Kessler, in fact, it can readily be inferred from the testimony that had not Kessler sold to Sooy he could have found other purchasers at satisfactory figures.
The question then resolves itself, as suggested by counsel for the defendants at the hearing: Was an enforceable contract made between the parents and the child in 1923? I *Page 90 
have no hesitancy in believing that Doctor and Mrs. Sooy were very much concerned because of the desire of their son to take up what he considered to be a musical career. It makes no difference whether they feared what the effect of such a career and a life in New York City, without their control and parental guidance, would have upon the young man, or whether it was their need for the services of the boy, growing into manhood, or whether it was a matter of pride and the hope that the son would succeed the father in a professional career as a physician.
I have no doubt that a conversation very much as testified to actually took place, and I have as little doubt that both Dr. and Mrs. Sooy, Sr., feel now that they are justified in saying that a binding contract was made, but the circumstances and the facts which have arisen since convinces me that no such contract was ever made. It is almost beyond the bounds of reason to believe that the mother and father of two children would bind themselves to give to one of the children, upon his reaching his majority, and at a time when the parents would be over sixty years of age, all of the property that they had, at the time of such agreement, accumulated, making no provision for their old age or sickness, should it fall upon them; and in addition with no consideration or provision whatever for the other child, a daughter still younger than the son. Such contract to be based only upon the consideration that the son, during his minority, would follow the father's desires as to his line of study, and would, during such minority, perform such services as the father should call upon him to perform, all of which it was his duty to do.
Having found that no contract was made between the Sooys and their son on February 14th, 1923, the result is that the conveyances made on March 15th, 1929, were without consideration and must be set aside.
A decree will be advised in accordance with these views. *Page 91