The complainant is the mother of the defendant Letitia Enot, and the maternal grandmother of the defendant Myrtle *Page 68 
King (nee Enot), Letitia's daughter. In the year 1931 the complainant, who then was of the age of approximately eighty-one years, took up her residence in the city of Rahway with the defendants Letitia and her husband, Michael. After residing with them for about two weeks, the complainant and the defendants Letitia and Michael entered into a verbal contract, whereby Letitia and Michael, for the consideration of $3,500 paid them by the complainant, agreed to board and lodge her in their home for a period of ten years. Shortly thereafter, Letitia and Michael concluded that the house they had been occupying did not conform to their wants, whereupon they decided to procure one which did. The complainant endorsed the idea. Not finding a suitable dwelling, Letitia and Michael then discussed with the complainant a plan of purchasing a plot of land and building a desirable home thereon. It met with complainant's favor. Letitia and Michael needed funds for the purpose. The complainant at their request expressed a willingness to advance them an additional sum of $3,500 toward it on the condition that they would board and lodge her for the rest of her life. Letitia and Michael agreed to this, and to the further condition, that the title to the premises was to be taken, and held, in the name of Letitia. The complainant, then, advanced Letitia and Michael the additional sum of $3,500. Her total contributions to Letitia and Michael amounted to the sum of $7,000.
The premises No. 39 Meadow street, Rahway, New Jersey, was purchased. A house was erected. The sum of $5,000 was borrowed, and a mortgage for this amount was given upon the premises. Upon the construction of the house the defendants Letitia and Michael, with their family, consisting of their daughter, Myrtle, and a son, Donald, and the complainant, took possession and occupied it. The complainant lived there with Letitia and Michael for a period of four years. During this time the complainant was content in the home; she had no fault to find with the treatment she received there. Things ran along smoothly in the household until about June, 1934, when the mortgage of $5,000, covering *Page 69 
the premises, became due. Letitia and Michael were unable to pay it. They requested the complainant to advance them this amount. She could not; she did not have the funds. She said that she might be able to borrow it. She could not, and so informed Letitia and Michael. From then the complexion of things changed. The agreeable domestic atmosphere which they had theretofore breathed was succeeded by discord and dissension. Complainant's existence in Letitia's home afterward was not as pleasant as it had been. Her accustomed comforts gave way to discomforts and annoyances. Letitia was no longer considerate in her attentions. There was a noticeable absence of filial regard for complainant. She was shabbily and meanly treated by Letitia. Several times Letitia threatened to eject her from the home. The quality of the meals which were thereafter provided for her, she said, were not as good as formerly. On March 7th, 1935, the breakfast which was served was unsatisfactory; she refused to eat it and arose from the dining table, departed from the house and visited the home of her daughter, Mrs. Robertson, with whom she remained the greater part of the day. On the afternoon of the same day, Mrs. Robertson took the complainant in her automobile and drove her back to Letitia's house, where she alighted and proceeded to enter the house but found its doors were locked. This, the complainant said, was unusual. Then being barred out and unable to enter the house, she returned to Mrs. Robertson's home. Mrs. Robertson again conveyed her to Letitia's house. She again tried to effect an entrance, but without success. They then returned to Mrs. Robertson's home. Mrs. Robertson telephoned to Letitia's home and the telephone call was answered by Letitia's daughter, Myrtle, to whom Mrs. Robertson reported the incident of the locked doors. Myrtle then told Mrs. Robertson that the complainant was no longer welcome in Letitia's home and was not wanted there. On that same evening, Donald Enot, Letitia's son, brought a valise containing complainant's belongings to the home of Mrs. Robertson where he deposited and left it.
Subsequently, the complainant employed Louis A. Schiffman, *Page 70 
an attorney, to search the title to No. 39 Meadow street, Rahway. His examination disclosed that the title to those premises was not in the name of the defendants Letitia or Michael, but in that of their daughter, Myrtle Enot. Myrtle subsequently married the defendant Rodney King. On October 23d 1935, Schiffman reported his finding to the complainant. Complainant contends that in not taking the title to the Meadow street premises, Letitia and Michael further violated their agreement with her; all of which is convincing evidence of fraudulent conduct on their part. The complainant alleges that Myrtle is without any right to the title; and that her name was never mentioned in connection with it at the time of the agreement, nor at any other time.
The complainant's daughters, Beneva Robertson and Helen Henwood, inquired of Letitia why she ejected their mother from the Enot home. She replied that it was the filial duty of each of the daughters to board and lodge their mother for a period of two and a half months in each year; and that she, Letitia, was tired of taking care of her mother and would no longer maintain that burden. The complainant, with her daughter, Helen Henwood, and her counsel, Louis A. Schiffman, called at the Enot home; but the defendant Letitia would not permit them to enter her house. She stated to them the only person who would be allowed to cross the threshold and discuss the situation with her, was the attorney, Schiffman.
The defendant Michael in his testimony, stated that the complainant wanted him to take the title to the premises; but he would not. Upon his refusal, complainant then wanted Letitia to take the title. She, too, refused to take it, and that, then, the complainant "agreed to have (my daughter) Myrtle take it." At the time Myrtle took the title to the premises, she was under the age of twenty-one years. Kessler v. Sooy, 108 N.J. Eq. 86;affirmed, 110 N.J. Eq. 559.
The defendants Letitia and Michael contend that the first $3,500 was a gift from the complainant as an appreciation of Letitia's kind treatment to her. Michael testified that *Page 71 
complainant, at the time she gave that sum, said to Letitia "you were always good to me — you deserve it — it is for past favors."
The evidence, and the surrounding circumstances, convinces me that there was a relationship of trust and confidence existing between the complainant and the defendants Letitia, Michael and Myrtle; that relationship was grossly abused and viciously betrayed by each of them. The testimony presents the justifiable inference that, despite the agreement of Letitia and Michael with the complainant, it was their intention when they made it, to violate it. I believe when the name of the titleholder was under consideration that it was then in the minds of Letitia and Michael to secretly place the title in the name of their daughter, who was then a minor. By the consummation of that act, they showed a lack of good faith and perpetrated a clear fraud upon the complainant.
I am satisfied that the complainant never discovered the fraud until after she had been ejected from her daughter's home, employed counsel to search the title, and received his report of it. The treatment accorded the mother when she attempted to talk to Letitia, and was refused admittance to the home, leaves very unfavorable inferences of Letitia's unnatural conduct and, in my opinion, leads to the inescapable conclusion that the complainant was grossly wronged.
Under the circumstances, equity will follow the course of the monetary contributions made by the complainant and declare the sum total thereof to be a trust in favor of the victimized mother. It does not seem necessary to submit citations in support of the rule in matters of this kind, the law is so well established; but a reference to some of them supporting the principle involved may not be amiss.
"When the consideration for a conveyance is paid by a person other than the grantee named therein, a resulting trust is ordinarily regarded as arising in favor of such person, on a presumption that one would not pay for property unless he intended to have the beneficial interest therein." 1 Tiffany onReal Property 397, citing Depeyster v. Gould, 3 N.J. Eq. 474. *Page 72 
In Depeyster v. Gould, supra, the court said:
"The fact that the consideration was paid by the trustee, or that it came out of his mortgage, is satisfactory; and it raises a trust by implication of law — a resulting trust — in favor of the complainants. Trusts of this nature, says Lord Hardwicke, are, where the legal interest is in another, but the purchase money has been paid by a third person. This is a resulting trust for him who paid the money."
In Lykles v. Lykles, 109 N.J. Eq. 490, it was held:
"Where a person furnishes money for the purchase of real estate with the understanding that he shall have an interest therein, a resulting trust ensues for the benefit of the person furnishing all or part of the purchase price, even though title be taken in the name of another."
The facts in the above case, as stated by the court, are:
"In 1919 the house in question was bought, the first payment being made by a draft drawn by the mother against the joint account, and title was taken in the name of the son alone. * * * The mother occupied the house with her family, including her husband and the defendant * * *. No question apparently was raised as to the ownership of the premises or the rights or interests of the parties therein, until the son's marriage. Discord then arose and the son ordered his mother out of the house, wherein she brought this suit."
The court, in discussing the evidence in that case, said:
"It seems abundantly clear from the testimony of all the witnesses that the complainant considered the premises were to be her home the rest of her life, and that defendant so stated."
Such was the situation in the instant case. The moneys paid by the complainant to Letitia and Michael come under the doctrine of equitable conversion to the extent of the complainant's monetary interest. The fraudulent conduct of Letitia and Michael in secretly having the title taken in the name of their daughter, Myrtle, is a badge of fraud which attaches to the title and imposes a constructive trust upon the lands which the daughter holds. *Page 73 
"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, * * * or through any other similar means or under any other similar circumstances which renders it unconscientious for the holder of legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder." 3 Pom. Eq. Jur. 2404§ 1053.
"* * * Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud; they arise purely by construction of equity, and independently of anypresumed or actual, intention to create a trust, being imposed upon the trustee for the purpose of working out a remedy."43 A.L.R. 1417.
"An exhaustive analysis, would show, I think, that all instances of constructive trusts properly so called may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source." 3 Pom. Eq. Jur. 2370 § 1044.
In Reeves v. Evans, 34 Atl. Rep. 477, it was held:
"A trust follows the legal estate wheresoever it goes, except it comes into the hands of a purchaser for valuable consideration, without notice."
The defendants Myrtle and Rodney King cannot benefit by the evident fraud of Letitia and Michael Enot. In Ordway Buildingand Loan Association v. Moeck, 106 N.J. Eq. 425, it was said:
"No person can derive a benefit from a misappropriation of trust funds, unless he shows that he acted in good faith and paid full value."
"The common feature of these statutes is that the conveyance which hinders, delays or defrauds creditors shall be void against them unless the party who has the property and against whom it is to proceed, received it in good faith and *Page 74 
for consideration. Thus there are two inquiries: First, as to the debtor's intention when he made the transfer, and second, as to the circumstances under which the defendant got the property. Around the latter is thrown a screen of protection into which two materials must enter, his good faith and also his having paid a consideration." Glenn, The Law of Fraudulent Conveyances 312.
There is no evidence that Mrytle and Rodney King paid any consideration whatever for the premises; evidence of their good faith is not apparent.
One of the points which stand out against the defendants and cries for relief is the very advanced age of the complainant. She is now of the age of eighty-six years. At the time of the alleged transaction, she was without the benefit of independent, or legal advice.
Under all the circumstances of the case, considering the advanced age of the complainant; the circumstances under which she parted with her money; the confidence reposed by the complainant in her daughter and her husband; the betrayal of that confidence, leaves room for only one conclusion, and that is: the complainant is entitled to the relief she seeks. I shall advise an order to this effect. *Page 75