Primarily, this is a suit to establish a trust on land, the title to which is in the name of the defendant, Elizabeth A. Keene-Schnizler, and for an accounting. Incidentally, the complainant Alice Keene-Finley, charging fraud and misrepresentation, seeks to have set aside a deed of conveyance of her interest in the land to the defendant, Elizabeth A. Keene. The complainants, Alice Keene-Finley and Louise M. Keene, and the defendant, Elizabeth A. Keene-Schnizler, are sisters.
About the year 1908 Edward J. Keene rented a property on Market Street, in Camden City, and there established his home and a bakery and ice cream business. The Keene family consisted of Mr. and Mrs. Keene and their three daughters. All worked about the home and in the business and all earnings and business profits were placed in a common fund; Mrs. Keene acted as family treasurer and disbursing agent and a bank account was carried in her name. In about 1918 two of the daughters, Louise and Alice, obtained clerical positions and, at about the same time, the third daughter, Elizabeth, took a position in a department store. All gave their earnings to their mother; she deposited them in her bank account; all continued to work, when possible, in the home and bakery.
Mrs. Keene died October 14th, 1920. Louise was appointed her administratrix and paid for her burial out of the bank account she had maintained; the balance in that account, some twelve or fourteen hundred dollars, was permitted to remain there, and a new account was opened by Louise who took over her mother's responsibilities of family treasurer and *Page 349 
housekeeper. Louise also worked regularly in the store and bakery.
In 1926 Elizabeth obtained a position with an insurance company in Philadelphia, and a few months later Alice took employment with the same company. Practically all of their earnings they gave to Louise and the money was used about the home or deposited in her bank account. Later, building and loan shares were taken out in the name of Elizabeth, and in the name of Louise; the monthly payments were made by Louise from out the common fund.
By the fall of 1926 the bakery and ice cream business had so deteriorated that Mr. Keene and his daughters decided it should be abandoned. They determined to purchase a sub-urban home, and agreed to use the money remaining in the bank account that had formerly been in the name of Mrs. Keene for that purpose. All four inspected and approved of the purchase of 303 East Atlantic Avenue, Haddon Heights. The purchase price was $7,125; $50 was to be paid upon the signing of the agreement of purchase, $250 within fifteen days thereafter, and $1,625 at the time of settlement; the balance, $5,200, represented an existing mortgage on the property, payment of which the purchasers were to assume.
The agreement to purchase was executed October 18th, 1926. Mr. Keene suggested that his name not be put in the agreement, or the deed, because of possible complications when he should die; Louise also expressed a reluctance to have her name appear in the title papers, perhaps prompted by the reason given by her father for she had contracted tuberculosis and had been in a sanitarium in 1918. As a consequence only Elizabeth and Alice were named as purchasers. There is some dispute as to just who produced the money for the down payment of $50, but all three sisters agree that the other two payments were made from the common fund managed by Louise. Final settlement was made and the deed of conveyance was dated December 18th, 1926; the grantees were Elizabeth A. Keene and Alice H. Keene.
There can be no possible question but that a resulting trust in favor of Mr. Keene and Louise took effect upon the execution of the deed. In fact, this is alleged by Alice and is now, *Page 350 
in effect, conceded by Elizabeth. In a formal answer filed in this cause Elizabeth asserted that the cash payments made, aggregating $1,925, were from the fund belonging to her father and his three daughters; at final hearing she declared that when she and Alice took title to the property she recognized that Mr. Keene and Louise each had and retained a one-quarter interest therein; and, on cross-examination at final hearing, she admitted that both Louise and Alice still had an interest in the property.Depeyster v. Gould (Court of Chancery), 3 N.J. Eq. 474,480; Lykles v. Lykles (Court of Chancery), 109 N.J. Eq. 490; 158 Atl. Rep. 105; Roy v. Enot (Court of Chancery),120 N.J. Eq. 67; 183 Atl. Rep. 906.
After the Haddon Heights home was purchased, Mr. Keene and his three daughters went there to live. Elizabeth and Alice continued to be employed with the Philadelphia insurance company; Louise continued to act as homemaker and family treasurer; Mr. Keene obtained employment; all contributed to the upkeep of the home. In 1933 Mr. Keene opened a tea room and, with the assistance of Louise, operated it successfully. Also, two boarders were accepted in the home. Their board, the earnings from the tea room and the salaries of Elizabeth and Alice were all turned over to Louise.
September 14th, 1929, Alice married. She gave up her position in Philadelphia and her husband, James P. Finley, came to live in the Keene home. He contributed $20 as for board, each week to Louise. Two years later, after Alice had taken over much of the housework because Louise was working in the tea room, this payment was reduced to $15 per week, and then, a year later, to $12.50 per week. Following the marriage of Alice, Louise suggested that if Elizabeth, who was still employed in Philadelphia, would take over the responsibility of paying mortgage interest and amortization and the taxes Elizabeth need no longer contribute any of her earnings to the family account. Elizabeth was never asked to pay board; she agreed to do as Louise suggested.
In February, 1937, Alice and her husband moved into their own home. About that time Mr. Keene closed the tea room and Louise obtained employment in Atlantic City. Only *Page 351 
Elizabeth and Mr. Keene remained in the home and it was decided to convert it into a two-family apartment. The total cost of the alterations was not disclosed, but $800 then remaining in the family account carried in the name of Louise was used. It also appeared that Elizabeth applied for and was paid the withdrawal value of the building and loan stock carried in her name and these moneys were expended, in whole or in part, to paint and improve the apartment house. The alterations were completed in 1937. Louise, having suffered a recurrence of her old malady, was taken to the tuberculosis sanitarium at Lakeland July 1st, 1939. She has been a patient there ever since. Thereafter, and until the death of Mr. Keene February 24th, 1942, he and Elizabeth occupied the second floor apartment and Louise made it her home when she could be with them. Elizabeth rented the first floor apartment; moneys collected by her were used to maintain the property, Mr. Keene contributing moneys he received from the sale of his restaurant fixtures and Louise earnings from her employment in Atlantic City and Camden. Mr. Keene died intestate; his three daughters are his next of kin and heirs-at-law.
Upon the death of Mr. Keene, Elizabeth let the apartment she and her father had been occupying and went to live with her sister Alice. Since February 24th, 1942, Elizabeth has had complete control of the apartment house; all rents have been collected by her, and she has never accounted to either of her sisters for any receipts or disbursements.
November 1st, 1940, Alice and her husband executed a deed of conveyance of their interest in the premises to Elizabeth. This conveyance, Alice charges, was obtained by fraud and misrepresentation. On several occasions preceding the execution of the deed Elizabeth called on Alice: It was the testimony of the latter that on these occasions Elizabeth said that an extension of the term of the mortgage on the apartment house was necessary; that she had inquired of the mortgagee and had been advised that an extension would be granted and the interest rate reduced if title to the premises could be vested in one person; that Elizabeth asked Alice and her husband to make a conveyance to her in order that she might *Page 352 
bring these things to pass; that Alice, believing and trusting her sister, agreed to do so. The testimony of Alice was corroborated by her husband.
Elizabeth caused a deed of conveyance and a form of affidavit of title to be prepared. When she was again invited to take dinner with Alice she took these two documents with her; the deed was signed by Alice and her husband and the form of affidavit was signed by Alice. No officer authorized to administer oaths or to take acknowledgments was present. Elizabeth took the deed and the affidavit form to her place of employment and there delivered them to an attorney-at-law of this state. The deed was immediately recorded. It bears what purports to be the signatures of the attorney, as a witness and as the acknowledging officer; the affidavit bears a similar signature and a certification that the oath was administered to Alice. Elizabeth testified that when she obtained this conveyance she "recognized" that Louise still had an interest in the land. Nevertheless, she did not mention the transaction to Louise.
A written agreement, executed by the mortgagee and Elizabeth, was admitted in evidence. It bore date May 16th, 1940, and conclusively demonstrated that the extension of mortgage and reduction in interest had been effectuated several months before Elizabeth first approached Alice to ask her to sign a deed. Being convinced of the verity of the testimony and of the facts I have just recited, I shall advise that the decree to be made in this cause declare void the deed of Alice and her husband to Elizabeth. A court of equity will rescind a transaction entered into upon the faith of a material representation, false in fact, if the person to whom it was made relied upon it and in consequence suffered injury. Eibel v. Von Fell, 55 N.J. Eq. 670; Blau v. Public Service Tire and Rubber Co. (Court ofErrors and Appeals), 90 N.J. Eq. 279, 280; 102 Atl. Rep. 664.
The situation which I shall now discuss developed after the institution of this suit. The original subpoena was issued December 29th, 1942; it was served upon Elizabeth personally and she retained counsel and filed an answer. June 26th, 1943, Elizabeth married the defendant Fred E. Schnizler. *Page 353 
July 30th, 1943, she made written application to First Mortgage Corporation for a mortgage loan of $2,800 on the apartment premises. The application was in the form of an affidavit and Elizabeth took oath thereto: She deposed that the premises were owned by her and that she did "not know any facts by reason of which the said possession of or title to the said premises, or any part thereof, might be disputed or questioned, or by reason of which any claim to any part of the said property, or to an undivided interest therein adverse to the deponent, might be set up or made." The affidavit concluded with this statement: "The deponent further deposes and says that all statements and representations in this affidavit contained are made in order to induce the making of the aforesaid loan, * * *." On this application Elizabeth was granted the loan applied for, the existing mortgage of $1,226.98 was satisfied, some other claims were paid and she received $1,409.14 in cash.
After the new mortgage was recorded, a supplemental bill was filed in this cause and the mortgagee, First Mortgage Corporation, was made a party defendant. It filed an answer merely putting complainants to their proof. It offered no testimony or other evidence. Technically, it was not necessary to make this defendant a party. Its interest in the land was acquired through Elizabeth, a defendant herein, and after a notice of the pendency and purpose of this action had been duly filed in the office of the register of deeds pursuant to the directive of R.S. 2:26-27. If it had not been made a party hereto, First Mortgage Corporation would still have been deemed to have acquired its interest with knowledge of the pendency of this suit, and it would have been bound by any decree entered herein. R.S. 2:26-28. Such interest as it acquired by its mortgage, was subject to the legal and equitable rights of the complainants as established by such decree as this court might enter in this cause. Sorg v. Tower (Court of Chancery),119 N.J. Eq. 109, 113; 181 Atl. Rep. 266.
It is only equitable and just, under the circumstances proven, that the mortgage of the defendant be decreed to be a good and subsisting lien upon the land to the extent of *Page 354 
payments made to satisfy and cancel the mortgage which existed when defendant's mortgage was executed and any valid taxes or municipal assessments. Beyond that, the mortgage of the defendant must be declared void as against the interests of Louise and Alice in the land, as those interest shall be declared by the decree to be made herein. The entire interest of Elizabeth is, of course, subject to the lien of defendant's mortgage.
When complainants filed their supplemental bill they also added another party defendant to the cause — Louisville Title Insurance Company. It filed an answer and was represented by counsel at final hearing. The evidence disclosed that it had issued a policy of title insurance to First Mortgage Corporation when the latter made its mortgage loan to Elizabeth and indicated that it had failed to discover the recorded lis pendens, but, as the issues are presented, no decree other than a dismissal of the bill can be advised with respect to it.
The deed to Elizabeth and Alice was, in form, a conveyance to them as joint tenants. The established facts and circumstances, however, make it certain that, as among themselves, the four purchasers intended the two named grantees to take the legal title, in trust, and all four to take, hold and enjoy the property as equitable tenants in common. Doubtless the form of the conveyance was prompted by the desire of all the parties that title be so held in trust and without the necessity of change so long as the survivor of Elizabeth and Alice should live. In equity, which considers substance rather than form, Mr. Keene and his three daughters owned the premises in question as tenants in common.
There was never any suggestion in the Keene family of an accounting, one to another, so long as they all contributed what they could in service or money to the common purpose of purchasing and maintaining their home and providing for their comfort therein. No suggestion is now made that, so long as Mr. Keene lived, Elizabeth should account as for the rental value of the apartment she and her father occupied. Nor, did the evidence establish any such bitterness among the parties as Vice-Chancellor Fielder considered tantamount to an exclusion inMaxwell v. Eckert, 109 Atl. Rep. 730 *Page 355 
(not officially reported). Complainants do insist that Elizabeth should account to them for all rents collected by her and that she should be charged with the reasonable rental value of an apartment when she had exclusive possession of it.
Elizabeth must, of course, account for all rents received by her from the common property, but may take credit for expenditures made for needful, ordinary repairs, taxes, mortgage interest and amortization, and insurance premiums. As a tenant in common a duty rested upon her to make such payments while in sole and exclusive possession of one or both of the apartments in the common property. This duty arises out of the receipt of benefits, actual or presumed, equal to the cost of preservation of the property. Mastbaum v. Mastbaum, 126 N.J. Eq. 366; 9 Atl. Rep.
2d 51.
It was established that after Elizabeth had lived for a time with her sister Alice, she again occupied one or the other apartment on one or more occasions. For this occupancy she should not be charged rent. No claim is made that Elizabeth ever attempted to exclude any of her co-tenants from the apartment. The apartment had been vacant until she occupied it; she was not required to let it remain vacant under penalty of paying rent to her co-tenants. If she had not made use of the apartment, it is possible that no owner would have benefited from it.
The rights and duties of tenants in common, in the absence of contract, were declared by Chancellor Williamson in 1857 inIzard v. Bodine, 11 N.J. Eq. 403. Three propositions, he said, were well established. The third reads:
"Where one tenant in common occupies the whole estate, without claim on the part of his co-tenants to be admitted into possession, he is under no obligation to account — for he had a right to such occupancy."
Vice-Chancellor Bigelow, in Mastbaum v. Mastbaum, supra, restated the rule:
"If there be nothing that amounts to an ouster or an exclusion, and if no rents be collected or pecuniary profit made from the property, then the tenant in possession, although he occupies the whole estate, is under no obligation to account."
Vice-Chancellor Bigelow also declared that whether one *Page 356 
tenant in common, who occupies part of the premises for dwelling purposes, is accountable for the value of the use of such part depends on whether his conduct is such as to exclude his co-tenants from enjoyment of the property. The Vice-Chancellor cited Buckelew v. Snedeker, 27 N.J. Eq. 80; Sailer v.Sailer, 41 N.J. Eq. 398; Lloyd v. Turner, 70 N.J. Eq. 425;O'Connell v. O'Connell, 93 N.J. Eq. 603; Newbeck v. Newbeck,94 N.J. Eq. 167; Maxwell v. Eckert, supra, and Platt v.Platt, 93 N.J. Eq. 395. The decisions in the O'Connell andNewbeck Cases are by our Court of Errors and Appeals. A tenant who has not been excluded and sees fit not to use the premises has no right to an accounting for the value thereof against a co-tenant in possession. Giguere v. Henke (Vice-Chancellor Lewis), 129 N.J. Eq. 7; 18 Atl. Rep. 2d 42.
Counsel and the parties should be able to agree upon an accounting; if they cannot, a special master will be appointed.