89 P.2d 524

KATSON v. KATSON.

No. 4414.

Supreme Court of New Mexico.

March 22, 1939.

Rehearing Denied April 24, 1939.

Mann & Tonkin, of Albuquerque, for appellant.

Robert Hoath LaFollette and D. Jackson Melton, both of Albuquerque, for appellee.

BRICE, Justice.

This is an action for divorce; and cross action by appellee for divorce, alimony and division of property, resulting in a decree for appellee, and for one-half of the property in appellant's name.

The question is whether the shares of stock in Court Cafe, a corporation, in the name of appellant (plaintiff below), are community property of appellant and appellee (defendant and cross-complainant below), as found by the trial court, or the separate property of appellant, as he here contends.

The few ultimate facts not contested are:

In 1925 the appellant and another established, and thereafter ran a restaurant business in the City of Albuquerque, known as the Court Cafe. There were changes of business associates, but at the time of the marriage of the parties in August, 1930, the appellant still owned a half interest in the business. The two partners incorporated the business in July 1934, and each became the owner of one-half the capital stock of the corporation by a transfer of the property and business of the partnership to it. In the year of 1936, the appellant became the owner of two thirds of the stock of the corporation by a transfer of certain property of the corporation to the other owner of its stock. The appellee was given one share of stock by appellant.

We start with the finding of the court that appellant was the owner of a half-interest in the Court Cafe at the time he married appellee. This therefore was his separate property; and the rents, issues and profits thereof were his separate property. Appellant's right in his separate property is just as sacred as is the right of the parties in their community property. State v. Sailors, 180 Wash. 269, 39 P.2d 397.

The burden of proof was upon the appellant to establish his separate title. But when its separate character was established, it maintains that character until the contrary has been made to appear by direct and positive evidence. Guye v. Guye, 63 Wash. 340, 115 P. 731, 37 L.R.A., N.S., 186; Jacobs v. Hoitt, et ux., 119 Wash. 283, 205 P. 414.

The only finding of the court upon which his decree could be justified is No. XII, a part of which is as follows: "The

property, both before and after the change to a corporation, was intermingled with the fruits of the community effort so that its identity was lost and could not be traced and identified as a separate property or estate of plaintiff."

This finding is bottomed upon the fact that appellant was the manager of the partnership and corporation; and that the community was entitled to the value of appellant's services and talent, and that they went into the business and thus became so commingled with appellant's separate property that the two cannot be separated. The finding that there was such commingling of property is challenged.

■ It is true, that the community owns the earning power of the husband, and that when it is used in the conduct of his separate business, the portion of the earnings attributable to his personal activities and talent is community property. In re Caswell's Estate, 105 Cal.App. 475, 288 P. 102. But it does not necessarily follow that the classes of property cannot be separated under well recognized principles of law. Shea v. Commissioner of Internal Revenue, 9 Cir., 81 F.2d 937; Van Camp v. Van Camp, 53 Cal.App. 17, 199 P. 885; Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A.,N.S., 880, 134 Am.St.Rep. 107.

■ It was contemplated by the statute which provided that the rents, issues and profits from the separate estates of the spouses should be separate property (N.M. Sts.1929, § 68-303); that separate property should have the direction of the owner;

and it could not have been intended that its owner must employ a manager to avoid its loss to the community. The question has been before the California courts a number of times, and satisfactory answers given.

If the appellant had desired, he could have employed a manager, in which case the entire proceeds from the operation of the cafe would have been his separate property. If no other means of proving the value of services is available, then the wages ordinarily paid for like services may be proven; or as held by some courts, the owner is entitled to at least legal interest on the money invested. Pereira v. Pereira, supra; In re McCarthy's Estate, 127 Cal. App. 80, 15 P.2d 223. While it is contended that a large part of the income was attributable to the skillful management of appellant, no attempt was made to prove his worth to the business.

■ As the property was never wholly owned by him, and he was paid definite salaries for his services, in the absence of definite evidence of their value, it will be presumed that the salary paid was the value of the services. This is the rule of the California courts.

"The only difficulty remaining arises from the fact that the income derived from the husband's services which were community property were commingled with the profits derived from the business in which the husband's capital was invested. This question of the commingling of the husband's capital and his services has been

frequently before the California courts, and it has been held that the amount derived from the capital investment should be separated from the amount derived from the husband's services in determining which is community property and which is his separate property. * * *

"No evidence was offered by the petitioner as to the relative return from his services for which he received the salary of $8,000 and of his capital which was employed in the ventures from which the profit was derived. Under these circumstances, it has been held by a California court that in the absence of other evidence, where the husband received a salary from the business, it is proper to attribute the balance of the income derived by him from the business as income upon his separate property.. * * *" Shea v. Commissioner of Internal Revenue [9 Cir.], 81 F.2d 937, 939.

"* * * As before stated, the court found that there was community property of the plaintiff and defendant Frank Van Camp of the value of $90,000, and by the judgment awarded plaintiff two-thirds of said sum. * * *

"* * * From the evidence offered touching the question, it appears without dispute that at the time of his marriage to plaintiff defendant was a man of large means, which included cash, notes, real estate, and corporate stock; that at the time he was president and manager of a corporation known as the Van Camp Sea Food Company, to the management of the affairs of which he devoted his exclusive attention, and for the services so rendered to said corporation received therefrom, up to January, 1918, the sum of $1,000 per month, which, commencing with January, 1918, was increased to $1,500 per month; that, in addition to such salary, he received from said company during the period of the marital relation an additional sum of $12,203 for the purpose of meeting expenses incurred by him in connection with the business; that during the period in question he was engaged in no other business whatsoever, and, excepting the money so received from said corporation, he had no income other than that derived as rents, issues, and profits from the property owned by him at the. time of his marriage. The total amount received by him from said corporation on account of salary and expense money during the existence of the marital relation was the sum of $69,203. It therefore follows that all other income, large or small, and regardless of the amount thereof, must necessarily have been derived from the property which he owned at the time of his marriage. * * *

"It is insisted by counsel for Mrs. Van Camp that the Van Camp Sea Food Company, if not a myth, was a mere agency through which defendant conducted his business, and, since its enormous income was due to the skill and ability with which defendant conducted the business, the community estate should be accredited with all the profits derived therefrom in excess of 7 per cent. interest upon the capital which

defendant had invested therein. In support of this contention she cites Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R. A.(N.S.) 880, 134 Am.St.Rep. 107, wherein it appeared that the husband at the time of the marriage had a separate estate of $15,000 invested in a business conducted by him. The trial court held that all moneys and profits derived by defendant after marriage through his personal management of such business belonged to the community estate. * * *

"So in the instant case, it is impossible to say what part of the enormous dividends paid by the Van Camp Sea Food Company should be apportioned to the skill and management thereof and what part should be apportioned to the investment of the capital and the favorable conditions under which the business was conducted. * * *

" * * * At no time did he own more than 1,499 shares of the stock. The corporation was duly organized and constituted an entity separate and distinct from that of defendant. Even were it otherwise, and, as claimed by plaintiff, a mere instrumentality for conducting defendant's business, nevertheless, in view of the fact that he was adequately paid by the corporation for his services, such compensation, under the holding in the case of Estate of Pepper, supra, must be deemed the extent of his personal earnings, and the balance of the profits derived from the business accredited to the use of the capital invested therein, in the same manner as though he had not been employed by the corporation." Van Camp v. Van Camp, 53 Cal. App. 17, 199 P. 885, 888.

Both the partnership and corporation had good accounting systems. The business was audited once a year, and at times oftener. From the auditor's reports and other uncontradicted evidence the salaries and advances paid appellant, the value of the property and income from the business, is easily ascertainable.

The court found that appellant's two-thirds of the stock of the corporation at the date of trial, was of the value of $24,000, which is binding here; but refused to find upon request, the value of the separate property of appellant, as of the date of the marriage of the parties.

There are few contradictions in the testimony, and these are not material to a decision. It appears from an auditor's report that the net worth of the partnership business on June 30, 1930, which was but a short time before the parties married, was approximately $34,400; that on December 21, 1931, it was $41,400; that on December 31, 1932, it was $28,800; in December 1933 it was approximately $30,000; on June 30, 1934 (at which time the business was incorporated), it was $30,325.28. On December 31, 1934, the net worth of the corporate property was approximately $31,000; and on June 30, 1935, it was $31,000; on June 30, 1936, it was $25,300. This reduction of $8,000 in value was caused by the selling to one of the partners for capital stock, property

of the corporation of the value of $8,000. On June 30, 1937, its net value was $25,500.

During the partnership the appellant drew a salary of $1,800 a year; and drew in addition money from the business so that he was indebted to the partnership over $11,000 at the date the business was incorporated. From the corporation he drew a salary of $5,400 for the first year; $7,200 the second year, and $8,400 the third year, or until June 30, 1937.

On June 30, 1937, according to the auditor's report and testimony, the property of the corporation was worth $25,000.

In truth the appellant received from the business, and (as he asserts) used for community purposes, much more than could have been the value of his services to the partnership and corporation, if we are to concede any value to the invested capital, the lease, location and good will. Apparently the whole of the earnings of the business were withdrawn by the interested parties during the time of the marital relation, except that used for replacements or betterments. There were some improvements made during the time, and the old equipment was replaced as necessity required; and the place was enlarged; but that was necessary to the success of the business, and a part of the overhead expense, else the expenditures would not have been made. The court found but little increase in actual value over the auditor's figures for June 30, 1930.

The income tax returns of the parties, which were based upon the claim that all of appellant's income was community property; may or may not be entirely correct. If appellant's services were equal to his salary and income, then the returns were correct. But these returns are consistent with an honest belief that the income was community property, even though it was not. Courts are not in agreement in all particulars on the question, and others may err regarding it. This alone did not establish the community character of the property, nor estop appellant from claiming that his stock in the corporation was separate property. It applied to the income only.

The fact that before and after marriage the appellant made declarations to appellee's mother to the effect that appellee "should share in all his property," and "that defendant was led to believe (by whom, the court did not find) that she was to share equally therein," falls far short of an agreement to transmute appellant's separate property into the community; assuming that it could be done by a gift; a question upon which the members of this court are not in agreement. McDonald v. Lambert, 43 N. M. 27, 85 P.2d 78. His declarations amount to no more than any right thinking husband might make without the intention of making a gift of the capital of his estate or the thought it would be so construed.

The fact that the corporation was formed, and the corporation's stock was

issued after the marriage of the parties, is immaterial if appellant's part of the capital was paid with his separate property.

In the absence of other definite proof of the value of appellant's services to the partnership and corporation, the salary he was paid is assumed to be their value. But in any event, the community has received from this business all to which it is entitled, according to the evidence before us.

In view of the fact that the district judge who tried the case is not available for its further consideration, the case must be reversed and remanded for a new trial.

If the parties agree, and we see no reason why they should not, the case might be retried on the present record, with such additional evidence regarding property rights, alimony, and support of the child as the parties may offer.

The case is reversed and remanded with instructions to grant a new trial.

It is so ordered.

BICKLEY, C. J., and ZINN and SADLER, JJ., concur.

MABRY, J., did not participate.