780 P.2d 640

Carolina OLIVAS, Petitioner–Appellee,

v.

Sam OLIVAS, Respondent–Appellant.

No. 10260.

Court of Appeals of New Mexico.

Aug. 1, 1989.

Nancy Ann Meuchel, Sapello, for respondent-appellant.

Eugenio S. Mathis, Las Vegas, for petitioner-appellee.

## OPINION

HARTZ, Judge.

Respondent Sam Olivas (husband) appeals the property division in a divorce action. Petitioner Carolina Olivas (wife) and husband were divorced by a partial decree entered December 18, 1984. The district court did not enter its final order dividing property until August 31, 1987. The issues in this appeal arise, for the most part, as a consequence of the unusually lengthy delay between the divorce decree and the property division.

Husband appeals the rejection of his claims to the following items in the property division: (1) compensation for his alleged constructive ouster from the community residence; (2) compensation for his alleged payment of community debts out of his separate funds; (3) the value of his share of allegedly missing community property for which wife was responsible; (4) his share of rent allegedly received by wife for use of community property; (5) his share of an amount owed by wife to the community for an increase in the value of her separate property created by efforts of the community; and (6) the value of allegedly missing separate property of his for which wife was responsible. We affirm.

## 1. CONSTRUCTIVE OUSTER

Husband and wife separated in June 1983, about two months before wife filed her petition for dissolution of marriage. The district court found that husband "chose to move out of the family home, and he then maintained another home where he also had his office for his business." Husband contends that the district court erred in failing to find that he had been constructively ousted from the family home. He requested findings and conclusions that the constructive ouster by his wife entitled him to half of the reasonable rental value of the home from the time of the initial separation.

Husband and wife held the family home as community property during the marriage and as tenants in common after dissolution. *See Phillips v. Wellborn*, 89 N.M. 340, 552 P.2d 471 (1976); *Hickson v. Herrmann*, 77 N.M. 683, 427 P.2d 36 (1967). Although wife was the exclusive occupant of the house after the separation, ordinarily a cotenant incurs no obligation to fellow cotenants by being the exclusive occupant of the premises.

> "[I]t is a well-settled principle of the common law that the mere occupation by a tenant of the entire estate does not render him liable to his co-tenant for the use and occupation of any part of the common property. The reason is easily found. The right of each to occupy the premises is one of the incidents of a tenancy in common. Neither tenant can lawfully exclude the other. The occupation of one, so long as he does not exclude the other, is but the exercise of a legal right. If, for any reason, one does not choose to assert the right of common enjoyment, the other is not obliged to stay out; and if the sole occupation of one could render him liable therefor to the other, his legal right to the occupation would be dependent upon the caprice or indolence of his co-tenant, and this the law would not tolerate."

*Williams v. Sinclair Refining Co.*, 39 N.M. 388, 392, 47 P.2d 910, 912 (1935) (quoting *Hamby v. Wall*, 48 Ark. 135, 137, 2 S.W. 705, 706 (1887)).

The result is otherwise, however, when the occupant has ousted the other cotenants. *See Chance v. Kitchell*, 99 N.M. 443, 659 P.2d 895 (1983). Although the term "ouster" suggests an affirmative physical act, even a reprehensible act, the obligation of the occupying cotenant to pay rent may arise in the absence of "actual" ouster when the realities of the situation, without there being any fault by either cotenant, prevent the cotenants from sharing occupancy. 4 G. Thompson, *Real Property* Section 1805, at 189 (J. Grimes Repl.1979), states:

> [B]efore a tenant in common can be liable to his cotenants for rent for the use and occupation of the common property, his occupancy must be such as amounts to a denial of the right of his cotenants

to occupy the premises jointly with him, or *the character of the property must be such as to make such joint occupancy impossible or impracticable.* [Emphasis added.]

We believe that it was this latter type of situation—an "ouster" in effect, without any physical act and perhaps without any fault—to which the New Mexico Supreme Court was referring when it recognized the doctrine of "constructive ouster" in the marital context in *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983). The court wrote:

> [I]f one of the parties in a divorce case remains in possession of the community residence between the date of the divorce and the date of the final judgment dividing the community assets, then there *may* be a form of constructive ouster, exclusion, or an equivalent act which is created as to the right of common enjoyment by the divorced spouse not in possession. *See* § 42-4-8, N.M.S.A.1978. This exclusion may render the divorced spouse in possession of the community residence liable to the divorced spouse not in possession for the use and occupation of the residence between the date of the divorce and the date of the final judgment. *See* § 42-4-9, N.M.S.A.1978. To hold otherwise would mean that both divorced spouses should have continued to live with each other during the eighteen month interim or that both should have abandoned the property. [Emphasis added.]

*Id.* at 330, 657 P.2d at 1179.

■ Applying the notion of constructive ouster in the marital context is simply another way of saying that when the emotions of a divorce make it impossible for spouses to continue to share the marital residence pending a property division, the spouse who—often through mutual agreement—therefore departs the residence may be entitled to rent from the remaining spouse. Although one can say that the departing spouse has been constructively "ousted," the term should not suggest physical misconduct, or any fault whatsoever, on the part of the remaining spouse.

■ Common law precedents support the proposition that the remaining spouse should pay rent to the cotenant when both cannot be expected to live together on the property. For example, when it is impractical for all cotenants to occupy the premises jointly, it is unnecessary that those claiming rent from the cotenant in possession first demand the right to move in and occupy the premises. *See Oechsner v. Courcier*, 155 S.W.2d 963 (Tex.Civ.App. 1941) (applying that principle when five heirs, with separate families totalling twenty-two members, were cotenants of a five-room cottage being occupied by one of the families); Annotation, *Accountability of Cotenants for Rents and Profits or Use and Occupation*, 51 A.L.R.2d 388, § 15 (1957). The impracticality of joint occupancy by the cotenants may result from the relations between the cotenants becoming "so strained and bitter that they could not continue to reside together in peace and concord." *Maxwell v. Eckert*, 109 A. 730, 731 (N.J.Eq.1920). *See Finley v. Keene*, 136 N.J.Eq. 347, 42 A.2d 208 (1945); *In re Marriage of Maxfield*, 47 Wash.App. 699, 737 P.2d 671 (1987). If, however, hostility flows only from the cotenant out of possession, ordinarily there would be no constructive ouster. *See O'Connell v. O'Connell*, 93 N.J.Eq. 603, 117 A. 634 (1922) (wife left home and refused to return despite solicitation by husband). In that circumstance the departing spouse has "abandoned" his or her interest in possession, rather than being excluded. *See* 4 G. Thompson, *supra*, § 1805, at 192 (possessing cotenant not liable for his use and occupancy when other cotenant has abandoned property). *Cf. Elsner v. Elsner*, 425 S.W.2d 254 (Mo.Ct. App.1967) (wife not required to pay rent to absent husband; husband apparently voluntarily abandoned home).

One jurisdiction has gone so far as to create a rebuttable presumption of ouster of the spouse who moves out of the former marital residence upon divorce. *See Stylianopoulos v. Stylianopoulos*, 17 Mass. App. 64, 455 N.E.2d 477 (1983). *Cf. In re Marriage of Watts*, 171 Cal.App.3d 366, 217 Cal.Rptr. 301 (1985) (court may order husband to reimburse community for exclusive use of residence after separation);

*Palmer v. Protrka*, 257 Or. 23, 476 P.2d 185, 190 (1970) (En Banc) (when marital difficulties make co-occupancy impossible, requiring occupant to pay one-half of rental value seems closest to parties' intentions when they took title); *but cf. Kahnovsky v. Kahnovsky*, 67 R.I. 208, 21 A.2d 569 (1941) (finding no ouster although "separation was the result of marital difference"); *Barrow v. Barrow*, 527 So.2d 1373 (Fla. 1988) (ex-spouses who own residence as co-tenants *after* final property distribution are treated just as any other co-tenants). We note that a comparable result has been achieved in New Mexico's Second Judicial District Court through unpublished Interim Guidelines adopted in December 1984, which provide that, in the absence of a contrary order or agreement of the parties, the parties will share the costs of maintaining the households for both parties during the pendency of the divorce proceeding.

 Husband had the burden of proving constructive ouster in this case. Therefore, we must sustain the district court's ruling against husband unless the evidence at trial was such as to *compel* the district court to find ouster. Although the evidence of hostility between the spouses may have sustained a finding by the district court of constructive ouster, there was substantial evidence to support the inference that husband's purpose in leaving the community residence was to live with a girl friend and his departure was the reason wife filed for divorce; he was not pushed out but pulled. Even if husband was entitled to a presumption of ouster (an issue we need not reach), that presumption would not *require* a finding in his favor once wife presented evidence that husband's motive for departure was to live with another woman. *See* SCRA 1986, 11–301 (presumption shifts burden of production but not burden of proof). Also, the delay of several years before husband demanded any rent from wife supports an inference of abandonment of his interest in occupancy. In short, the evidence was conflicting and did not compel a finding of constructive ouster.

We recognize the ambiguity in the district court's finding that defendant "chose to move out." Such language could be consistent with husband's departure being the result of marital friction, in which case there generally would be constructive ouster. On the other hand, the language could also be construed as referring to husband's abandoning the home to live with another woman. We choose the second construction of the finding, because "[i]n the case of uncertain, doubtful or ambiguous findings, an appellate court is bound to indulge every presumption to sustain the judgment." *Ledbetter v. Webb*, 103 N.M. 597, 602, 711 P.2d 874, 879 (1985). Moreover, it appeared from oral argument before this court that the issue of constructive ouster was framed in the district court in essentially the same manner as treated in this opinion. Therefore, we are comfortable in assuming that the district court applied the proper rule of law and in construing the district court's finding compatibly with its rejection of husband's proposed conclusion of law that there was a constructive ouster.

## 2. COMMUNITY DEBTS

Husband contends that the district court failed to consider his payment of community debts with his separate property. After the entry of the divorce decree husband continued for several years to run the trucking business that he and wife formerly owned as community property. Husband claims that after the divorce he used his separate income from the business to pay taxes that were community debts and the community owes him for all such payments.

 After the divorce the parties owned the trucking business as tenants in common. *Hickson v. Herrmann*. Although husband and wife had an equal interest in the *profits* and *losses* of the business, *see Rutledge v. Rutledge*, 119 Cal.App.2d 114, 259 P.2d 79 (1953); *Walton v. Walton*, 287 Mich. 557, 283 N.W. 687 (1939), any *salary* husband earned from the business after the divorce would be his separate property. *See* NMSA 1978, § 40–3–8(A) (Repl.1986); *Mitchell v. Mitchell*, 104 N.M. 205, 215–16, 719 P.2d 432, 442–43 (Ct.App.1986). Therefore, if husband's salary were used to pay taxes owed by the community, the community would be indebted to him; but the

community would not owe him anything if the taxes were paid with money from the business that did not constitute husband's salary.

Although husband apparently had no set salary, the district court could still determine what portion of the business proceeds should be considered to be husband's salary—a fair remuneration for his service to the business. In *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1973), the court confronted the need to compute a spouse's salary in a similar context; the issue was whether the community had received fair and adequate compensation for its labor in the conduct of a separate property business. We agree with *Speer* that among the factors to be considered in estimating salary are: "the nature of the business, the size of the business, the number of employees, the nature and extent of [husband's] involvement in the conduct of the business, the growth pattern of the business," and "salaries of non-owner employees at the same level of responsibility in comparable types of businesses in the same area of the country." *Id.* at 128, 525 P.2d at 323. *See Michelson v. Michelson*, 89 N.M. 282, 286–88, 551 P.2d 638, 642–44 (1976).

 On the question of whether money used to pay community tax debts came from funds that should have been considered to be husband's salary, husband bore the burden of proof because (1) he was the party who raised the issue, and (2) as manager of the business he had control of how much money he took out of the business for personal use and of the business records needed to determine if the money he took out was less than a fair salary. *See Carter v. Burn Constr. Co.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973) (the party alleging the affirmative has the burden of proof). *Cf. Katson v. Katson*, 43 N.M. 214, 221, 89 P.2d 524, 528 (1939) ("In the absence of other definite proof of the value of appellant's services to the partnership and corporation, the salary he was paid is assumed to be their value."). Apparently wife does not dispute that money from the business was used to pay tax debts of the community. The question is whether that money was, at least in part,

husband's salary. Husband offered evidence concerning a fair figure for his salary. The district court, however, may not have credited that evidence, particularly since it consisted largely of husband's opinion. Moreover, given husband's testimony that he would take whatever he needed for his personal needs from the business account and frequently retained cash from business receipts before making a bank deposit, the district court may have doubted husband's version of how much he withdrew from the business for personal use. In other words, the district court may have doubted that husband took from the business less than his efforts were worth. We hold that the district court properly could have decided that husband did not meet his burden of proving he used separate funds—his salary—to pay community debts and therefore could reject husband's proposed findings of fact and conclusions of law on this matter. *See Luchetti v. Bandler*, 108 N.M. 682, 777 P.2d 1326 (Ct.App. 1989) (district court can reject finding proposed by party with burden of proof if it does not credit the evidence admitted in support of that party's position). The failure of the district court to make a specific finding of fact on the issue constituted a finding against husband. *See Gibbons & Reed Co. v. Bureau of Revenue*, 80 N.M. 462, 457 P.2d 710 (1969) (failure of court to make finding is regarded as finding against party with burden of proof).

## 3. MISSING COMMUNITY PROPERTY

Husband claims that various community property items that were in wife's control are now missing. He contends that the district court erred in not so finding and in failing to compensate the community for the loss.

**A. Tools.** Husband contends that tools owned by the community disappeared and wife should compensate the community for them. He argues that wife became bailee or constructive bailee for the tools and had the duty to account to the community for their disappearance.

 A bailment requires possession by the bailee. Possession requires "the union of two elements, physical control over the

thing possessed, and an intent to exercise that control." R. Brown, *The Law of Personal Property* § 10.2, at 213–14 (W. Raushenbush 3d ed. 1975). Husband testified that he left the tools adjacent to trucks parked by the community residence and gave wife the keys to the trucks. He asserts that wife knew of the presence of the tools on the property. The district court may have refused to credit this testimony; and even if the court believed husband, his testimony would not compel a finding that wife intended to exercise control over the tools. The district court properly could refuse to find a bailment.

**B. Bar Equipment.** Husband alleges that equipment from a bar the couple operated disappeared sometime between the divorce decree and the property division, while wife had exclusive control over these items. Husband argues that the equipment, which was originally purchased in the early 1980's for $12,000, had a value at the time of the property division of $9,500, less the value of a refrigerator sold for community debts. The original cost of the refrigerator was $2,500; wife testified that it sold for $1,500. Husband alleges that the bar equipment remaining at the time the property was finally divided was worth approximately $750.

■■■■■■ The district court awarded the equipment to wife, so if some of the equipment was lost, she bears the loss. The sole matter of concern to husband is whether the equipment (including any that had disappeared) was valued properly for purposes of making an equal division of the couple's property. The district court valued the equipment at $5,000. This valuation was lower than husband's; but wife testified that the same property was worth only $4,000, and later reduced her estimate to $2,000. An owner is competent to give opinion testimony on the value of community property. *Lewis v. Lewis*, 106 N.M. 105, 739 P.2d 974 (Ct.App.1987). Thus, there was substantial evidence supporting the district court's valuation. We affirm the district court on this issue.

**C. Liquor Inventory.** Husband appeals the district court's rejection of his requested finding that wife had control over $6,000 worth of liquor from the bar, which husband alleges disappeared while in wife's custody. As husband was the party attempting to establish the disappearance of the liquor, he had the burden of proof on the issue. *See Carter v. Burn Constr. Co.* Husband does not explain why it was impermissible for the district court to reject the evidence supporting husband's claim. Therefore we affirm the district court on this issue.

**D. Chain Saws.** Husband also complains of the disappearance of chain saws that he claims were in wife's custody. He does not contest the district court's valuation of the chain saws in the property division. As the district court awarded the chain saws to wife, husband was not harmed by any loss.

## 4. RENTAL OF BAR EQUIPMENT

Husband appeals the district court's rejection of his proposed finding that wife rented community property bar equipment for approximately $10 per day. The evidence was conflicting. Husband claimed wife let her daughter use the equipment in return for meals. Wife conceded that she let her daughter use the equipment, but maintained that she received nothing in return. Husband had the burden of proof on this issue. As the district court did not have to believe his evidence, we affirm the district court's refusal to find in his favor.

Husband also contends that he was ousted from using the bar equipment and he could have made money by renting it, instead of letting it be used for free. Husband cites *Williams v. Sinclair Refining Co.* for the proposition that a tenant in common is entitled to share in the use and enjoyment of personalty upon demand. Again, however, husband had the burden of proving ouster and the district court could reject his evidence. Therefore, even if husband's interpretation of *Williams* is correct, we will not reverse the district court for its failure to find that husband was ousted from using the bar equipment.

## 5. INCREASE IN VALUE OF SEPARATE PROPERTY

Husband contends that the district court erred in failing to award him half of an increase in the value of property belonging to wife as her separate property. Wife does not contest husband's assertions that during their marriage he constructed an earthen stock watering pond on wife's separate property, increasing the value of the property by $600. Although husband submitted a requested finding and a requested conclusion seeking credit for the increase in value, wife's requested findings and the findings of the district court did not address this issue.

 Wife contends that husband's $300 share of the $600 is offset by a $4,500 debt from husband to wife; but nothing in the record supports that contention. Still, we do not remand to the district court for consideration of the $300 credit to husband in making the property division. Although ordinarily community property must be divided equally, see *Bustos v. Bustos*, 100 N.M. 556, 673 P.2d 1289 (1983), the district court is not required to make the division with mathematical exactness. *See Ridgway v. Ridgway*, 94 N.M. 345, 610 P.2d 749 (1980). We recently refused to examine possible errors in a property division when they concerned such a small fraction of the property involved as to be *de minimus*. *Cox v. Cox*, 108 N.M. 598, 775 P.2d 1315 (Ct.App.1989). That approach is appropriate in this case. The $300 involved here constitutes a small fraction of the value of the parties' community assets (valued by the district court at more than $200,000). The potential error is certainly significantly less than the range of error possible in evaluating the various community assets. Moreover, in an unchallenged finding the district court ruled that the wife's limited employment prospects entitle her to "slightly more than one-half of the total value of the assets of the parties." In these circumstances justice does not require a remand; it is better served by an end to this litigation.

## 6. MISSING SEPARATE PROPERTY

Husband appeals the district court's rejection of his proposed finding that he left at the community residence $4,500 worth of his separate property which he has been unable to retrieve. With the exception of his claims regarding some cash, which we treat separately, wife disputes husband's factual contentions. Husband had the burden of proof on these matters. We affirm the district court, because husband does not explain why the district court had to accept the evidence supporting husband's position.

As for the cash, wife has admitted spending on community debts $1,500 of husband's separately owned funds. Thus, $750 is her share of what the community should reimburse husband. Nevertheless, for the reasons stated in section 5 of this opinion, the amount of money at stake does not justify remand to the district court for reconsideration.

## CONCLUSION

The judgment is affirmed. Both parties should bear their own costs and attorney fees on this appeal.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

DONNELLY, J., specially concurs.

DONNELLY, Judge (specially concurring).

I concur in the result reached by the majority on each of the issues raised by appellant on appeal; I disagree, however, with the discussion concerning appellant's claim of constructive ouster.

Appellant asserts that the trial court improperly rejected his requested finding of fact that he was constructively ousted or evicted from the family home and that he should be compensated for a portion of the reasonable monthly rental value of the residence from the time of the parties separation to the entry of the final judgment disposing of the community debts and assets. The trial court adopted a finding determining that appellant "chose to move out of the family home, and he then main-

tained another home where he also had his office for his business." Appellant contends that the court's finding is not supported by substantial evidence. Although the record contains conflicting testimony on this issue the trial court's finding is supported by substantial evidence.

An "ouster" is a wrongful dispossession or exclusion of a party from real property and involves proof of intent of one party to exclude another. *Hamilton v. MacDonald,* 503 F.2d 1138 (9th Cir.1974); *Mastbaum v. Mastbaum,* 126 N.J.Eq. 366, 9 A.2d 51 (1939). A party seeking to establish the fact of ouster must prove that he has unequivocally been deprived of the right to the common and equal possession and enjoyment of the property. *See Young v. Young,* 37 Md.App. 211, 376 A.2d 1151 (1977). Generally, ouster may not be presumed solely from the fact that one party is in possession of the property. *Barrow v. Barrow,* 527 So.2d 1373 (Fla. 1988). Similarly, a cotenant in possession of property is not liable to another cotenant for a portion of the fair rental value of the occupied property, except where he has agreed to pay, deprived the other of possession, or has used the property so as to constructively exclude the other cotenant from its use or enjoyment. *See Chance v. Kitchell,* 99 N.M. 443, 659 P.2d 895 (1983); *Keeler v. McNeir,* 184 Okl. 244, 86 P.2d 1004 (1939); *Roberts v. Roberts,* 584 P.2d 378 (Utah 1978); *In re Marriage of Maxfield,* 47 Wash.App. 699, 737 P.2d 671 (1987). "Exclusive use," which means no more than one cotenant using the entire property, requires either an act of exclusion or a use of such nature that it necessarily prevents another cotenant from exercising his rights in the property. *Young v. Young.* Generally there can be no holding adversely or ouster by one cotenant unless the fact of such exclusive holding is communicated or made known to the other. *Barrow v. Barrow.*

Where the parties have separated and one spouse retains exclusive possession of the community residence pending entry of the final decree of divorce, such occupancy, if tantamount to an ouster or constructive eviction, may render the spouse who retains possession of the property liable to the other for a portion of the reasonable rental value. *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983). If the evidence, however, supports a finding that one party elected to move out of the community residence, absent conduct and an intent on the part of the remaining party to exclude the other from the property, denial of a claim of ouster or constructive eviction is proper.

The term "constructive eviction" most commonly arises in the context of a landlord and tenant relationship. *See Santrizos v. Public Drug Co.,* 143 Minn. 222, 173 N.W. 563 (1919). For the acts of one party to constitute a constructive eviction of another, there must be an injurious interference with one party's possession, substantial deprivation of the party's beneficial use of the premises, and such impairment of the party's right to reasonable use of the premises that he is compelled to vacate the property. *See Ben Har Holding Corp. v. Fox,* 147 Misc. 300, 263 N.Y.S. 695 (1933). Where one party is forced to leave the home because of violent conduct of the other, such fact may give rise to a finding of ouster. *See Young v. Young.* In situations where the property is not adaptable to double occupancy, occupancy of the property by one party where rancor or hostility exists to the degree that one or the other must vacate the property may give rise to a basis for finding a constructive ouster. *Newman v. Chase,* 70 N.J. 254, 359 A.2d 474 (1976). *See Cummings v. Anderson,* 94 Wash.2d 135, 614 P.2d 1283 (1980); *see also* Annotation, *Accountability of Cotenants for Rents and Profits or Use and Occupation,* 51 A.L.R.2d 388, at § 15 (1957).

No presumption of constructive ouster or eviction arises from the mere fact that one spouse has left the marital residence and the other remains in possession. Proof of occupancy of realty by one party, without more, does not render a tenant liable to a cotenant for use of the property because each has a right to occupy the premises. *In re Estate of Lopez,* 106 N.M. 157, 740 P.2d 707 (Ct.App.1987). *See also* NMSA 1978, § 40-3-3 (Repl.1986); *Oliver v. Oli-*

*ver,* 710 S.W.2d 942 (Mo.App.1986). Each case must be decided under the facts of that particular case.

The finding of the trial court determining that appellant was not ousted from the ·community residence is supported by substantial evidence; thus denial of appellant's requested finding of fact seeking an award of the rental value of the community residence during the separation was proper.

*See Holloway v. New Mexico Office Furniture,* 99 N.M. 525, 660 P.2d 615 (Ct.App. 1983).