This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LISA BRUTON,**

Petitioner-Appellee,

v.                                                        **No. A-1-CA-36661**

**KENNETH BRUTON,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Gary R. Fernandez
Grants, NM

for Appellee

Carter & Valle Law Firm, P.C.
Linda Lillie Ellison
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}**   Kenneth Bruton (Husband) appeals the district court's decision in connection with his divorce from Lisa Bruton (Wife). Husband contends the district court erred: (1) on several grounds in calculating child support, (2) in characterizing certain real property and the marital residence as community property, and (3) in dividing miscellaneous property. We affirm.

### BACKGROUND

**{2}**   Husband and Wife were married in 1999. They had a son in 2000 and a daughter in 2005 (collectively, Children). Husband and Wife operated a guided hunting business

jointly with another partner for several years prior to their separation. Husband also received and continues to receive Social Security Disability Income (SSDI). Each child receives SSDI derivative benefits of $150 per month based on Husband's disability.

**{3}** Wife petitioned for dissolution of the marriage in 2015. Soon after, the district court entered a temporary order providing, among other things, that the parties agreed that the monthly SSDI derivative payments covered any child support needs. The district court held a trial on contested issues over four days in 2016 and 2017. The district court entered a lengthy decision summarizing the evidence presented at trial, ordering child support, and dividing the parties' real and personal property. Husband sought reconsideration of the district court's decision. The district court made certain amendments to its original decision based on Husband's motion but largely ratified the original decision, and Husband appealed. We reserve further discussion of the facts for our analysis.

## DISCUSSION

### I. Child Support

**{4}** Husband raises three issues concerning the child support award: (1) that the district court erred in determining the parties' respective incomes used to calculate child support, (2) that the district court erred by failing to grant him an unconditional credit for Children's SSDI derivative payments toward the child support award, and (3) that the district court erred in using Worksheet A to calculate child support. "The setting of child support is left to the sound discretion of the [district] court as long as that discretion is exercised in accordance with the child support guidelines." *Grant v. Cumiford*, 2005-NMCA-058, ¶ 21, 137 N.M. 485, 112 P.3d 1142 (internal quotation marks and citation omitted). We review any questions of law de novo. *Id.*

### A. The Parties' Income

**{5}** Husband contends the district court erred in calculating both his and Wife's gross monthly incomes. We review the district court's findings regarding parental incomes, as required by the guidelines to apportion child support, for substantial evidence. *Id.* "Income," for purposes of calculating child support, "means actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." NMSA 1978, § 40-4-11.1(C)(1) (2008). "Gross income," in turn, is "income from any source and includes but is not limited to income from salary, wages, [and] tips," as well as "social security benefits" and "disability insurance benefits." Section 40-4-11.1(C)(2). "Gross income" also includes "income from self-employment," defined as "gross receipts minus ordinary and necessary expenses required to produce" the income. Section 40-4-11.1(C)(2)(b).

**{6}** First, Husband contends the district court erred in computing his monthly income above an amount supported by his testimony.[1] Various evidence was presented on Husband's gross income. Wife testified that as guides and outfitters prior to their separation, Husband and Wife were often paid and tipped in large quantities of cash to avoid taxes and affecting Husband's SSDI benefits. She added that she thought Husband alone, based on reports from their bookkeeper, received at least $50,000 in cash payments each year. A former business partner testified that Husband and Wife grossed approximately $78,400 combined from the guiding and outfitting business in 2013 and 2014, and Husband grossed $42,000 in 2015. Husband testified that he continued to actively work as a guide for a local outfitting company, making a $2,000 monthly wage, as well as doing other odd jobs for varied amounts.

**{7}** In the light of the foregoing, the district court was free to give Husband's testimony regarding his current income less weight than the evidence regarding Husband's income from prior years. *See Lopez v. Adams*, 1993-NMCA-150, ¶ 2, 116 N.M. 757, 867 P.2d 427 ("It is for the [district] court to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent statements and determine where the truth lies."). The district court calculated Husband's non-disability income at approximately $39,200, which was consistent with Husband's income from the guiding business in 2013 and 2014 and less than his income in 2015. *See Boutz v. Donaldson*, 1999-NMCA-131, ¶ 7, 128 N.M. 232, 991 P.2d 517 (permitting the court to approximate an income based on income received for past similar efforts); *Major v. Major* 1998-NMCA-001, ¶ 12, 124 N.M. 436, 952 P.2d 37 (suggesting "possible approach" to computing rancher's annual costs, as part of income calculation, was to use the "average cost" over five years). Further, it was undisputed Husband received approximately $12,000 per year, or $1,000 monthly, in disability income. Based on Husband's testimony, the evidence regarding his business income from the prior three years, the evidence regarding cash payment in his line of work, and the undisputed evidence regarding Husband's disability income, substantial evidence supports the district court's calculation of Husband's annual gross income at $51,213 ($39,213 in non-disability and $12,000 in SSDI) and his monthly gross income at $4,268.

**{8}** Second, Husband argues Wife should have been estopped from presenting income evidence different from that listed in their joint tax returns in 2011, 2012, and 2013, and the district court erred in considering such evidence. But as this Court has observed multiple times, the income calculation "is more concerned with a parent's actual cash flow than . . . with income as represented on tax returns." *Jury v. Jury*, 2017-NMCA-036, ¶ 30, 392 P.3d 242 (internal quotation marks and citation omitted). Moreover, this Court has explained a district court errs in limiting its income calculation to the figures shown on a tax return where the record reveals additional sources of revenue because our child support guidelines require consideration of income "from any

---

[1] Husband seems to contend the district court improperly imputed him income beyond what he testified to—or, in other words, found that Husband could and should be making more than he was actually making at the time of the trial. We do not read the district court's decision as imputing income to Husband. Instead, the district court found, based on the evidence presented, that Husband was actually making about as much as he had previously made. We therefore consider whether the evidence supported this finding.

source." *Padilla v. Montano*, 1993-NMCA-127, ¶ 37, 116 N.M. 398, 862 P.2d 1257. Here, the district court correctly considered additional evidence of Husband's actual gross income beyond the figures shown on the tax returns and substantial evidence supports the district court's calculation of Husband's actual gross income.

**{9}** Third, Husband contends the district court erred in not imputing additional income to Wife as an underemployed parent under the child support guidelines. *See* § 40-4-11.1(C)(1) (defining actual gross income as potential income if the parent is unemployed or underemployed). The district court calculated Wife's gross monthly income at $642, based on evidence that she made this amount as a cook for a local school district. Husband argues the district court should have imputed either their prior-year income to Wife, based on Wife's testimony she had returned to working with outfitters, or, in the alternative, the court should have imputed a full-time minimum wage. Husband presented no argument to the district court regarding imputation of Wife's prior level of income, and thus we decline to review the argument on appeal. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 ("[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal."); *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court."). Further, Husband presented no evidence that additional employment opportunities at full-time minimum wage were available to Wife. *See Cherpelis v. Cherpelis*, 1996-NMCA-037, ¶ 13, 121 N.M. 500, 914 P.2d 637 (declining invitation to require imputation of income in spousal support case at full-time minimum wage and noting "[the h]usband presented no evidence that additional employment for [the w]ife was actually available"). In the absence of any record on the question of Wife's full employment, we cannot conclude the district court abused its discretion in calculating Wife's gross monthly income at $642. *See id.*; *see also State ex rel. Human Servs. Dep't v. Kelley*, 2003-NMCA-050, ¶¶ 14-15, 133 N.M. 510, 64 P.3d 537 (explaining the district court must determine whether the parent has acted in good faith to earn and preserve as much for support as is reasonable under the circumstances and reviewing the district court's determinations for abuse of discretion).

**{10}** We conclude the district court did not err in calculating the parties' incomes for child support purposes.

## B.     Credit for Children's SSDI Derivative Payments

**{11}** Husband contends the district court erred by failing to grant him an unconditional credit for the SSDI derivative payments Children received based on his disability. The district court ordered that "credit is to be given to [Husband] for any amounts actually used by [Wife] as child support from the derivative [SSDI] payments against the [child support awarded against Husband]." (Emphasis omitted.) We review the district court's decision for abuse of discretion. *See Pedersen v. Pedersen*, 2000-NMCA-042, ¶ 5, 129 N.M. 56, 1 P.3d 974. Deviation from the child support guideline amounts are permitted under certain circumstances, pursuant to NMSA 1978, § 40-4-11.2 (1989). In *Pedersen*,

we explained that "in allowing a credit against basic child support for off-schedule sources of income, such as social security benefits paid directly to the child, Section 40-4-11.2 requires the [district] court to exercise its discretion on a case-by-case basis, with the child's standard of living a crucial factor." 2000-NMCA-042, ¶ 5. In making this determination, the district court is to calculate the parties' support obligations without reference to the derivative payments. *See id.* ¶ 6. The party seeking credit for the payments then has the burden of justifying any deviation from the calculation. *Id.*

**{12}** Husband's only justification for an unconditional credit, both to the district court and on appeal, is that the parties agreed in a pretrial proceeding that the SSDI derivative payments would satisfy his support obligation. Husband has cited no authority for the idea that the temporary pretrial agreement should have permanent effect, and thus we assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482; *see also Ottino v. Ottino*, 2001-NMCA-012, ¶ 25, 130 N.M. 168, 21 P.3d 37 (explaining the parties' agreement cannot be used to control the discretion of the court and deny the right of the court to exercise its statutory powers). Nor has Husband cited any portion of the record establishing the parties actually intended their temporary agreement to be permanent. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). What is more, Husband presented no other evidence or argument regarding how a credit might affect Children's standard of living. The absence of that evidence would sustain a decision awarding Husband no credit at all. *See Pedersen*, 2000-NMCA-042, ¶ 6.

**{13}** The district court nevertheless granted Husband a credit toward his child support obligation so long as the parties demonstrate the derivative payments are actually used as support for Children. The district court appears to have imposed the condition based on the fact that the derivative payments previously had been put into savings and not used for support, and Husband had stopped derivative payments for one child after he discovered Wife had withdrawn some of the funds. While the district court made no express findings as to how a credit would affect Children's standard of living, the implication is clear the court found the credit was warranted and would best promote their standard of living only if actually made available to them and used on their behalf. *Cf. id.* ¶ 6 (requiring the district court to "make findings explaining how and why the child's receipt of [monthly] social security benefits justifies giving [the f]ather a full or partial credit against the guideline amount of child support").

**{14}** On this record, we cannot conclude the district court abused its discretion in awarding Husband a conditional credit for Children's SSDI derivative payments.

## C.    Use of Worksheet A

**{15}** Husband points out that one child lives full-time with Wife, while the other child splits time equally between the parents. He notes that in *Erickson v. Erickson*, 1999-NMCA-056, ¶ 10, 127 N.M. 140, 978 P.2d 347, we set forth the method for calculating child support under similar circumstances. In accordance with *Erickson*, the district court

is to compute the support award for the child living full-time with one parent using Worksheet A's basic visitation scheme, compute the award for the second child splitting time equally between parents using Worksheet B's shared responsibility scheme, and adjust the calculation for the second child to account for the fact that he or she is the sole child housed by one parent and the second child housed by the other. *See id.*; *see also* § 40-4-11.1(K) (setting out instructions for calculating child support under Worksheet A and Worksheet B). The district court here employed a different method. The court observed Wife has full-time custody of one child and shared 50-50 custody of the other child, concluded this was equivalent to having both Children 75 percent of the time, and used Worksheet A to calculate the obligation using two children with Wife 75 percent of the time. Husband contends the district court erred by using Worksheet A in this way and should have instead "perform[ed] an *Erickson* analysis."

**{16}** Regardless whether the district court erred, Husband has failed to establish that application of the *Erickson* method would have benefited him. He has offered no proposed calculation under *Erickson*. Our own calculation under *Erickson* reveals Husband's obligation would have been over $100 more per month than the district court calculated. Generally, we require a showing of prejudice to find an error reversible, and because Husband would incur a larger obligation under the application of the method he requests, he has not made the requisite showing here, and thus we do not reverse on this basis. *See, e.g., Talley v. Talley*, 1993-NMCA-003, ¶ 11, 115 N.M. 89, 847 P.2d 323 ("[A]n appeal by one against whom an award at a level lower than that set forth in the guidelines has been made should also be rare."); *see also Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 ("An error is harmless unless the complaining party can show that it created prejudice.").

## II.    Real Property and the Marital Residence

**{17}** Husband contends the district court erred in characterizing fifty-three acres of real property and the marital residence thereon as community property. He asks us to review the determinations de novo. Were any legal questions raised by the district court's determinations, we would review them de novo. *See Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16. But Husband does not claim here that the district court misinterpreted any applicable statutory provision or misapplied any legal principle—he instead appears to contend the district court erred in failing to adopt his testimony regarding the origin of the property. His claim, in other words, contests solely whether the evidence presented supported the district court's determination that the property in question was community property, and thus we review for substantial evidence. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 25, 146 N.M. 473, 212 P.3d 361 (reviewing for substantial evidence where no legal questions remain); *Corley v. Corley*, 1979-NMSC-040, ¶ 8, 92 N.M. 716, 594 P.2d 1172 (reviewing finding that divorcing spouses' farm was community property for substantial evidence).

**{18}** In support of his claim, Husband simply recounts his testimony and the exhibits he presented, suggesting the real property in question had been deeded to him alone

and he alone had financed the purchase of the residence with proceeds from a sale of his own land. In reviewing substantial evidence claims, however, we ask not whether evidence exists to support a contrary result, but whether substantial evidence supports the result actually reached. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Again, the district court was free to resolve conflicts in the evidence, to weigh the facts, and to evaluate the credibility of the witnesses. *See, e.g.*, *Lopez*, 1993-NMCA-150, ¶ 2; *see also Lahr v. Lahr*, 1970-NMSC-165, ¶ 2, 82 N.M. 223, 478 P.2d 551 ("We presume the correctness of the judgment of the [district] court who had the advantage of evaluating the demeanor of the parties and of the witnesses.").

**{19}** "Community property is broadly defined as 'property acquired by either or both spouses during marriage which is not separate property.' " *Arnold v. Arnold*, 2003-NMCA-114, ¶ 8, 134 N.M. 381, 77 P.3d 285 (quoting NMSA 1978, § 40-3-8(B) (1990)). "Property acquired during marriage by either husband or wife, or both, is presumed to be community property." NMSA 1978, § 40-3-12(A) (1973). There is ample evidence in the record to support the district court's determination that the real property and marital residence was community property. Wife testified that a portion of the real property in issue had been purchased with community funds, several years after the parties were married. Husband and Wife produced exhibits showing an additional portion of the real property had been transferred to them jointly, as "husband and wife," as a gift by Husband's stepmother. They both testified the marital residence was purchased partly from the proceeds of the sale of property the district court deemed community property. Both parties produced evidence that they had both signed the purchase agreement for the residence. Property tax bills showed both parties had been taxed in preceding years for the property in question as joint owners. And the district court found Husband was less credible on this issue than Wife, as it was entitled to do.

**{20}** We conclude substantial evidence supports the district court's characterization of the real property at issue and the marital residence thereon as community property. *See Ohl v. Ohl*, 1981-NMSC-128, ¶ 5, 97 N.M. 175, 637 P.2d 1230 (concluding substantial evidence supported the district court's finding that the property acquired during marriage was separate property); *cf. Arch, Ltd. v. Yu*, 1988-NMSC-101, ¶ 12, 108 N.M. 67, 766 P.2d 911 (concluding presumption of community property had been established based on acquisition of the property during marriage and no substantial evidence supported rebuttal of presumption).

## III.    Miscellaneous Property

**{21}** Husband provides a long list of other items including vehicle accessories, a trailer, tools, furniture, two cabins on the community real property, firearms, horses, and dogs he contends the district court erred in characterizing as community or separate property, valuing, and/or dividing between the parties. We review the district court's findings regarding the characterization and valuation of property for substantial evidence. *See Corley*, 1979-NMSC-040, ¶ 8 (reviewing finding that the property was community property for substantial evidence); *see also Olivas v. Olivas*, 1989-NMCA-

064, ¶ 20, 108 N.M. 814, 780 P.2d 640 (observing that "[a]n owner is competent to give opinion testimony on the value of community property" and reviewing the district court's property valuation for substantial evidence). We review the district court's division of community property for abuse of discretion. *Arnold*, 2003-NMCA-114, ¶ 6. The district court is required to equally divide community property between the parties. *Irwin v. Irwin*, 1996-NMCA-007, ¶ 10, 121 N .M. 266, 910 P.2d 342. There is no requirement, however, that the court provide each party the same dollar value, so long as the court apportions the property by a method best suited to the circumstances. *Ridgway v. Ridgway*, 1980-NMSC-055, ¶ 5, 94 N.M. 345, 610 P.2d 749; *Irwin*, 1996-NMCA-007, ¶ 10 ("The division of property, however, need not be computed with mathematical exactness.").

**{22}**    We briefly examine the items Husband claims the district court improperly characterized, valued, or divided. First, while the parties agreed the diesel truck would go to Wife, Husband maintains that the district court should have permitted him to remove certain accessories from the truck. Husband, however, has identified no abuse of discretion in the district court's finding that removal of Husband's desired accessories was imprudent or impracticable. Second, Wife testified the trailer and tools had been purchased in part with community funds after the parties were married, and the district court found these items to be community property and divided accordingly. Third, Wife testified she purchased the furniture remaining in the marital residence with community funds, and the district court found the furniture to be community property and divided accordingly. Fourth, Wife testified the cabins on the real property had been built in part from community labor and materials purchased with community funds, and the district court found the cabins to be community property and divided accordingly. Fifth, Wife and Husband both testified regarding the provenance of each of the guns in question and their respective values. The district court as a result characterized certain guns as separate property and others as community property, and awarded the parties credits as necessary for half the value of the guns deemed community property. Sixth, both parties, and another witness, testified regarding the provenance of the horses and their respective values. The district court as a result characterized certain horses as separate property and others as community property, and awarded the parties credits as necessary for half the value of the horses deemed community property. Seventh, both parties also testified regarding the provenance of the dogs and their respective values. The district court characterized all the dogs as community property, awarded possession to Husband, and awarded Wife a credit for half the value of the dogs.

**{23}**    Based on the record before us, we conclude substantial evidence supports the district court's characterizations of the miscellaneous items as separate or community property and the valuation of said items. We further conclude the district court did not abuse its discretion in distributing the assets between the parties and in awarding credit to the non-possessing party for half the value of each community item retained by the other party. Husband's recap on appeal of only his own self-serving testimony is unavailing. *See, e.g.*, *Jurado v. Jurado*, 1995-NMCA-014, ¶ 9, 119 N.M. 522, 892 P.2d 969 ("[I]t was [the appellant]'s duty to set forth the evidence in the light most favorable to

support the findings, and then demonstrate why the evidence failed to support the findings made by the [district] court.").

**CONCLUSION**

**{24}**   We affirm the district court's dissolution decision.

**{25}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**CYNTHIA A. FRY, Judge Pro Tempore**

**J. MILES HANISEE, Judge**